**EQUITABLE GAS COMPANY, an operating DIVISION OF EQUITABLE RESOURCES, INC., Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**EQUITABLE GAS COMPANY, an operating DIVISION OF EQUITABLE RESOURCES, INC., Respondent,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner.**

Nos. 91–2638, 91–2663.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1992.

Decided June 2, 1992.

Henry Jared Wallace, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., argued (Lauren Klett Kroeger, on brief), for petitioner.

Margaret Gaines Bezou, N.L.R.B., Washington, D.C., argued (Jerry M. Hunter, Gen. Counsel, D. Randall Frye, Acting Deputy Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Howard E. Perlstein, Supervisory Atty., on brief), for respondent.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

PHILLIPS, Circuit Judge:

Equitable Gas Company (Equitable) petitions for review of a decision by the National Labor Relations Board (Board) that Equitable had violated § 8(a)(1), § 8(a)(3), and § 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. § 158, by unilaterally adopting appearance guidelines and discharging employee James McHale under the guidelines' disciplinary provisions. The Board crosspetitions for enforcement of its resulting order. We affirm in part, vacate in part, and modify in part the Board's decision and order. We grant enforcement of the order as modified.

### I.

Equitable is a public natural gas company with 900 employees represented by six unions. International Brotherhood of Electrical Workers, Local Union No. 1956 (Union), represents clerical workers at Equitable's Pittsburgh, Pennsylvania headquarters.

McHale is a Credit Fieldman in Equitable's Customer Services Department. He is a uniformed employee who makes field investigations of customer accounts. McHale has been employed by Equitable for 29 years, and for most of that time, he has worn a long beard and shoulder-length hair. McHale was President of the Union from 1978 until 1987. During the years preceding this action, McHale participated in handling numerous Union grievances at arbitration.

McHale was involved in two relevant conflicts with Equitable management. In June of 1988, McHale presented the Union's position at a hearing on a unit clarification petition. The Union alleged that Equitable had established a separate company as a means of diverting unit jobs to a nonunion operation, and the Union argued that the description of its bargaining unit should be clarified to include those jobs.

In July of 1988, Equitable convened a meeting of management and Union officials which McHale attended. At this meeting Equitable's Manager of Labor Relations, Willard Hardaman, criticized the Union for opposing many of Equitable's actions, including some activities which McHale openly had challenged. Hardaman referred to Equitable as "bunnies", accused the Union of taking "pot shots" at Equitable, and said that Equitable would soon "arm the bunnies and the bunnies would start to shoot back." Hardaman said that unless the Union cooperated, Equitable would increase automation and the use of outside contractors. At that meeting, Equitable President John Milantoni said to McHale, "I see you haven't shaved your beard off yet." McHale responded, "[N]o, I haven't and I have no intentions to." Milantoni responded, "Good."

From 1985 to 1987 Equitable received negative media coverage and severe criticism from the Pennsylvania Public Utility Commission (PUC). PUC levied fines on Equitable for poor customer service. In response, Equitable management instituted a broad program to improve its public image. Equitable remodeled the first floor of its headquarters to accommodate customer services employees who formerly occupied the third floor and began considering employee appearance guidelines.

A 1987 Equitable memorandum said the Union would probably challenge an appearance code as "a unilaterally imposed change in 'working conditions' and/or as an unwarranted extension of management's rights." Equitable acknowledged that the following language from the memorandum referred to McHale:

Hopefully, our ultimate definition and/or code will be reasonable and address the extremes. As you know, we have one Credit Fieldman who presents a rather unorthodox appearance and who ... will argue that his appearance is an asset....

Equitable asked the Union to appoint an employee committee to discuss the appearance guidelines. Equitable sought the Union's input but refused to bargain. In February 1988, the committee met with management. In June of 1988, Equitable sent the Union the "final draft" of the appearance guidelines, which prohibited

"[e]xtreme appearance such as unkempt, bushy facial hair or unconventional hairstyles." The guidelines provided for counseling for the first violation and application of the General Disciplinary Policy for subsequent offenses. The guidelines for customer services employees took effect in July of 1988.

On or about July 4, 1988, McHale's direct supervisor told McHale he had ten days to comply with the guidelines. In the ensuing months, McHale received a verbal warning, a written warning, a one-day suspension, and a 10–day suspension. In August, McHale met with management and agreed to cut his hair and trim his beard, but McHale's supervisor later told management that McHale had not cut enough. On August 16, Equitable suspended McHale for 30 days. On October 31, Equitable discharged him for "refusal and failure to report for work in compliance with ... Appearance Guidelines." Although some other employees were counseled, McHale was the only employee disciplined under the guidelines.

McHale and the Union filed a grievance which went to arbitration. The arbitrator found that Equitable was entitled to unilaterally adopt and enforce appearance guidelines and that there was no evidence that Equitable did so in retaliation for McHale's Union activities. However, finding that McHale's behavior was not serious enough to warrant discharge, the arbitrator ordered Equitable to reinstate McHale without back pay.

McHale and the Union filed Board charges alleging that the implementation of the guidelines violated § 8(a)(1), § 8(a)(3), § 8(a)(4) and § 8(a)(5) of the Act. In December of 1989, an Administrative Law Judge (ALJ) denied Equitable's motion to defer to the arbitrator's award and found that Equitable had violated § 8(a)(1) by threatening to retaliate against employees for engaging in protected behavior. However, the ALJ found that Equitable had not violated § 8(a)(5) by failing to bargain with the Union over the guidelines nor violated §§ 8(a)(1), (a)(3), and (a)(4) by adopting and enforcing the guidelines to retaliate against McHale for his union activities.

On review, the Board affirmed the ALJ's refusal to defer to the arbitrator. It affirmed the ALJ's finding of a violation of § 8(a)(1) for implied threats and the ALJ's finding that Equitable had not violated § 8(a)(4) by retaliating against McHale for giving testimony under the Act, but the Board set aside the ALJ's other findings. The Board found that Equitable had violated §§ 8(a)(1) and (a)(3) by adopting and enforcing the guidelines in a discriminatory manner against McHale and that Equitable had violated §§ 8(a)(1) and (a)(5) by refusing to bargain with the Union over the guidelines. The Board ordered Equitable to rescind the guidelines, bargain with the Union on the new guidelines, halt implied threats to employees, and reinstate McHale with back pay. This petition for review and cross-petition for enforcement followed.

## II.

We address in turn the Board's refusal to defer to the arbitrator's award and the following Board findings: (1) its rejection of McHale's claim under § 8(a)(4); (2) the conclusion that Equitable violated §§ 8(a)(1) and (a)(3) by adopting and enforcing the guidelines specifically to retaliate against McHale for his union activities; (3) the finding that Equitable violated § 8(a)(1) by threatening Union officials and employees; and (4) the finding that Equitable violated § 8(a)(5) by unilaterally adopting appearance guidelines without bargaining with employees.

### A.

■ The decision whether to defer in a particular case is a discretionary one which we review only for abuse. *N.L.R.B. v. Motor Convoy, Inc.*, 673 F.2d 734, 735 (4th Cir.1982). But the Board's discretion in this matter is limited by its prior decisions recognizing a national policy in favor of using voluntary arbitration as a critical means of resolving labor disputes. *Olin Corp.*, 268 N.L.R.B. 573, 574 (1984). In *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080

(1955), the Board adopted the general policy of deferring to an arbitration award when the arbitration proceedings appear to have been fair and regular, all parties have agreed to be bound, and the decision is not clearly repugnant to the purposes and policies of the Act. *Id.* at 1082. *Raytheon Co.*, 140 N.L.R.B. 883 (1963), later emphasized that to warrant deferral, the arbitrator must adequately have considered the unfair labor practice issue presented to the Board. *Id.* at 884–85. *Olin* later fleshed out this requirement with the rule that an arbitrator has adequately considered the unfair labor practice if (1) the contractual issue is factually parallel to the unfair labor practice issue, and (2) the arbitrator was presented generally with the facts relevant to resolving the unfair labor practice charge. *Id.* at 576.

The Board has excepted from the *Spielberg/Olin* general deferral policy allegations made under § 8(a)(4) of the Act, which prohibits an employer from "discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges or given testimony under th[e] Act...." 29 U.S.C. § 158(a)(4). To insure protection of the fundamental right secured by § 8(a)(4), the Board also has declined to defer to arbitration awards with respect to other allegations that are so "closely intertwined" with § 8(a)(4) allegations that a hearing on the § 8(a)(4) charges will produce evidence on the related allegations as well. *Filmation Associates*, 227 N.L.R.B. 1721, 1722–23 (1977).

In the instant case, the Board adopted the ALJ's view that deferral was improper for all of McHale's allegations because the §§ 8(a)(1), (a)(3), and (a)(5) challenges were closely intertwined with the (a)(4) challenge. Neither the ALJ nor the Board articulated a basis for that conclusion.

While we accept the *Filmation* exception to the *Spielberg/Olin* deferral policy,[1] we are concerned that it be applied only on the basis of a reasoned determination, specific to the facts of a case, that the necessary

"close intertwinement" of the § 8(a)(4) claim with other allegations exists such that deferral on the other issues is also inappropriate. Failure to make such a determination risks allowing employees to evade unfavorable arbitration awards by simply appending essentially unrelated § 8(a)(4) allegations to any claims rejected in arbitration. Where, as here, the Board (and the ALJ) has failed to make the determination, we must make the inquiry—one of law—as an essential aspect of our review of the Board's decision not to defer. In doing so, we may find deferral proper with respect to some and improper with respect to other allegations presented to the Board.

### B.

In light of the *Filmation* rule that the Board need not defer to arbitration awards with respect to allegations made under § 8(a)(4) of the Act, we affirm the Board's refusal to defer and the Board's finding that Equitable did not violate § 8(a)(4) by retaliating against McHale for giving testimony under the Act.

### C.

We also affirm the Board's refusal to defer to the arbitrator's decision with respect to allegations that Equitable violated §§ 8(a)(1) and (a)(3) by adopting and enforcing the appearance guidelines to retaliate against McHale for his union activities. Although deferral would have been appropriate under *Spielberg* and *Olin*, these claims were closely intertwined with McHale's retaliation charge under § 8(a)(4), hence they came within the *Filmation* exception. McHale's broad allegations of discriminatory treatment under §§ 8(a)(1) and (a)(3) included the argument which formed the basis of his § 8(a)(4) claim: that Equitable discharged him partly in response to his presentation of the Union's position at the unit clarification hearing in June of 1988. Therefore, a hearing on the § 8(a)(4)

---

**1.** The Sixth Circuit has accepted the *Filmation* exception to *Spielberg*, while the First Circuit has rejected it. *See Grand Rapids Die Casting*

*Corp. v. NLRB*, 831 F.2d 112, 115–16 (6th Cir. 1987); *NLRB v. Wilson Freight Co.*, 604 F.2d 712, 721–23 (1st Cir.1979).

claim would produce evidence on the §§ 8(a)(1) and (a)(3) claims.

■ Although the Board was therefore within its discretion in assessing these claims *de novo,* we believe there was insufficient evidence on the record as a whole to warrant the Board's finding that Equitable had violated §§ 8(a)(1) and (a)(3) in this respect. *See Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). Under *Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), to prove an employer's retaliatory motive based on anti-union animus, an employee must make a prima facie showing sufficient to support an inference that protected conduct was a motivating factor in the employer's decision. Upon such a showing, the burden of proof shifts to the employer to show that it would have taken the same action regardless of the employee's protected conduct. *Id.* at 1094. McHale failed to make a prima facie case. The Board inferred animus against McHale from the 1987 memorandum and Milantoni's comment at the July 1988 meeting. We believe these comments are insufficient to prove Equitable adopted and enforced the guidelines to punish McHale.

McHale claims Equitable implemented the guidelines in response to his participation in the unit clarification hearing. However, the hearing occurred six months after Equitable began discussing guidelines. In addition, McHale had been active in Union matters during the ten years prior to the adoption of the guidelines, and Equitable did not retaliate during those years. Finally, although McHale was the only employee disciplined under the guidelines, Equitable gave him numerous opportunities to comply.

Even assuming McHale made a prima facie showing of anti-union animus as one motivating factor in McHale's ultimate discharge, Equitable satisfied its burden under *Wright Line* of proving it would have adopted the guidelines regardless of McHale's activities. Although the media and the PUC had not specifically criticized the appearance of Equitable employees, we think it essentially undisputed that Equitable adopted the appearance guidelines as part of a company-wide program to upgrade its public image following the adverse criticisms of its customer service.

Accordingly, we vacate the Board's finding that Equitable violated §§ 8(a)(1) and (a)(3) by adopting and enforcing the guidelines against McHale in a discriminatory manner.

### D.

■ We find no error in the Board's refusal to defer to the arbitration award with respect to McHale's claim that Equitable violated § 8(a)(1) by impliedly threatening employees for engaging in protected activities under the Act. Because the implied threats allegation was not presented to or considered by the arbitrator as required by *Olin,*[2] we need not reach the question whether the charge was closely intertwined with the § 8(a)(4) claim.

■ We believe there is substantial evidence on the record to support a finding that Equitable violated § 8(a)(1) by impliedly threatening employees for engaging in protected activity. *See Universal Camera Corp.,* 340 U.S. at 477, 71 S.Ct. at 459. Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157." 29 U.S.C. 158(a)(1). Filing grievances and Board charges are protected activities under the Act. 29 U.S.C. § 157; *N.L.R.B. v. City Disposal Systems, Inc.,* 465 U.S. 822, 836, 104 S.Ct. 1505, 1513, 79 L.Ed.2d 839 (1984). An employer violates § 8(a)(1) by threatening reprisals for engaging in such protected activity. *N.L.R.B. v. U.S. Postal Serv.,* 906 F.2d 482, 486 (10th Cir.1990). The test under § 8(a)(1) "is not whether the language or acts were coercive in actual fact, but whether the conduct in question had a reasonable tendency in the totality of circumstances to intimidate." *N.L.R.B. v. Nueva Engineering Inc.,* 761 F.2d 961, 965 (4th Cir.1985).

---

**2.** Hardaman's speech of July 21, 1988, was not   even mentioned in the arbitrator's opinion.

We agree with the Board that Hardaman's July 1988 speech before Union representatives had a reasonable tendency to intimidate employees. Hardaman's references to Union "hassles," his allusion to arming the bunnies and "let[ting] them shoot," and his claim that Equitable would increase automation and the use of outside contractors if the Union did not cooperate were implied threats of reprisal for Union activities. Accordingly, we affirm the portion of the Board's order holding Equitable in violation of § 8(a)(1) and requiring Equitable to cease impliedly threatening employees.

### E.

■ We conclude that the Board abused its discretion in failing to defer to the arbitrator's holding that Equitable had not violated the collective bargaining agreement by unilaterally adopting the guidelines. Deferral was appropriate under the *Spielberg/Olin* tests. The three day arbitration proceedings were fair and regular, the parties agreed to be bound by arbitration under their collective bargaining agreement, and the finding that the guidelines were work rules which could be unilaterally adopted by Equitable was not clearly repugnant to the goals of the Act. In addition, in accordance with *Olin*, the arbitrator squarely had addressed bargaining as a contract issue which was factually parallel to the unfair labor practice claim under § 8(a)(5). The Board found it need not defer, however, because the § 8(a)(5) allegation was closely intertwined with the § 8(a)(4) allegation. We disagree.

McHale's claim that Equitable committed an unfair labor practice by failing to bargain collectively over the appearance guidelines required an interpretation of provisions in the collective bargaining agreement and an interpretation of testimony by Union members that might have constituted waiver of the right to bargain. This factual inquiry presented issues that were wholly separate from the question whether Equitable adopted the guidelines with a retaliatory motive. Because the § 8(a)(5) claim was not closely intertwined with the § 8(a)(4) claim, the Board abused its discretion by failing to defer to the arbitrator's opinion on the issue. Accordingly, we vacate the Board's finding that Equitable violated § 8(a)(5), and hold that it should have deferred to the arbitrator's conclusion that Equitable did not violate the collective bargaining agreement by unilaterally adopting the guidelines.

### III.

In summary, we affirm the Board's finding that Equitable had violated § 8(a)(1) by impliedly threatening its employees for engaging in protected activities and its finding that Equitable had not violated § 8(a)(4) by retaliating against McHale for giving testimony under the Act. We vacate as unsupported by substantial evidence on the record as a whole the Board's finding that Equitable had violated §§ 8(a)(1) and (a)(3) by retaliating against McHale for union activities. We also vacate the Board's finding, at odds with the arbitrator's award to which it erroneously refused to defer, that Equitable had violated § 8(a)(5) by unilaterally adopting the guidelines.

Accordingly, we affirm that portion of the Board's order which directs Equitable to cease and desist from making implied threats to its employees and which, in accordance with the arbitrator's award, requires Equitable to reinstate McHale. We vacate those portions of the Board's order which require Equitable to rescind the guidelines, to bargain with the Union over new guidelines, and to give McHale back pay in connection with his reinstatement. As so modified, we grant enforcement of the Board's order. 29 U.S.C. § 160(e) (court of appeals may modify or set aside in whole or in part Board orders).

AFFIRMED IN PART, VACATED IN PART, AND, AS MODIFIED, ENFORCED.