

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2003

# USA v. Feldman

Precedential or Non-Precedential: Precedential

Docket No. 02-3547

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Feldman" (2003). *2003 Decisions.* Paper 312.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/312

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 30, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3547

UNITED STATES OF AMERICA

v.

HOWARD ALLEN FELDMAN,

Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Cr. No. 01-448-01)
Judge: Honorable Bruce W. Kauffman

Argued: May 20, 2003

Before: SCIRICA, *Chief Judge*, NYGAARD
and BECKER, *Circuit Judges*

(Filed July 30, 2003)

> KIRK T. KARASZKIEWICZ (ARGUED)
> 100 S. Broad Street
> Suite 2230
> Philadelphia, PA 19110
>
> *Counsel for Appellant*

PARTRICK L. MEEHAN
United States Attorney

LAURIE MAGID
Deputy United States Attorney
 for Policy and Appeals

ROBERT A. ZAUZMER
Assistant United States Attorney
 Senior Appellate Counsel

AMY L. KURLAND (ARGUED)
Assistant United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

*Counsel for Appellees*

---

## OPINION OF THE COURT

---

BECKER, *Circuit Judge*.

This appeal by Howard Allen Feldman turns on the meaning of "loss" under the United States Sentencing Guidelines and the Victim Witness Protection Act (as amended by the Mandatory Victims Restitution Act). Feldman filed a bankruptcy petition in which he vastly understated the amount of property he owned. Indicted for concealing assets and making false declarations in bankruptcy, he pled guilty and was sentenced to fifteen months imprisonment and ordered to pay restitution to his creditors. Feldman contests the District Court's determination of the amount of loss, which affected both the prison sentence he received (under the Sentencing Guidelines a defendant's base offense level will be increased incrementally for the loss cause by his crime) and the amount of restitution he was ordered to pay to his creditors.

Feldman contends that there was little if any actual loss that resulted from his crime and that the District Court erred in its calculation that his creditors lost over $138,000, and were entitled to restitution in that amount. He submits that most of the property he failed to report

was held by him and his wife as tenants by the entireties under Pennsylvania law, making the property unavailable for execution by his creditors to satisfy the debt owed by Feldman alone. *See* 18 U.S.C. §§ 3663 and 3664 (stating that restitution is limited to the amount of loss actually caused by the defendant's crime). In other words, Feldman claims that although he committed a crime (he acknowledges that he was obligated to report the property), his crime had no effect on the amount of money his creditors ultimately received from the bankruptcy discharge.

The District Court did not determine whether or not the property owned by Feldman and his wife as tenants by the entireties would have been exempt from bankruptcy, reasoning instead that Feldman lost the right to claim the exemption when he failed to disclose the property. The Court then concluded that the actual loss to Feldman's creditors was the difference between what was owed to them and what they actually received in the bankruptcy discharge. The Court based this conclusion on case law suggesting that bankruptcy courts can refuse to allow an exemption for property that the debtor initially concealed.

Without getting into the merits of whether property exempt from bankruptcy because it is held as tenants by the entireties can ever be distributed to the creditors unique to one spouse, we conclude that the District Court's reasoning was flawed. In our view, the loss of an exemption *during a bankruptcy proceeding* does not impact upon the determination of actual loss (for restitution or sentencing purposes) since the bankruptcy court, unlike the District Court here, is not calculating the harm caused by the defendant's crime.

The determination of actual loss is relevant to the sentencing enhancement, since loss under the Sentencing Guidelines is the greater of the actual loss caused by the defendant's illegal actions or the amount of loss the defendant intended to cause. *See* U.S.S.G. § 2F1.1 application note 8 ("[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."); *United States v. Yeaman*, 194 F.3d 442, 456 (3d Cir. 1999). Under our

jurisprudence, even if the District Court erred in determining actual loss, we must still affirm the sentence if the District Court did not abuse its discretion in finding that Feldman intended to cause a loss (greater than the actual loss), even if it was impossible for that loss to have actually occurred.

Feldman claims that the government failed to show that he intended to cause a loss to his creditors; rather, he maintains that he thought the property he concealed was exempt from bankruptcy and he did not disclose it because he thought the large amount of property would "raise a red flag" and delay the bankruptcy proceeding. Feldman also submits that he never intended his creditors to receive less money by failing to disclose all of his property, since by reason of the exemption they would not be able to reach the concealed assets. However, we do not believe that the government was obligated to disprove Feldman's claim that he thought the property was exempt. While the government must prove Feldman's intent by a preponderance of the evidence, we conclude that intent can be inferred from the fact that Feldman concealed a large amount of property. It is enough that the District Court found unbelievable Feldman's claim that he simply wanted to expedite the bankruptcy process. Thus, while the District Court may have erred in its discussion of actual loss, that error is irrelevant for sentencing purposes since the District Court did not abuse its discretion by determining that Feldman intended to cause a loss of the entire amount of debt owned. Accordingly, the increase in Feldman's base offense level, while not justified by a finding of actual loss, is justified by a finding of intended loss; hence we will affirm the sentence imposed.

In contrast, a restitution award can only be based upon actual loss. Since the District Court erred in its determination of actual loss, we will vacate the restitution award and remand for further proceedings, so that the District Court can compute actual loss based on the difference between what Feldman's creditors would have received if Feldman had acted lawfully and disclosed all of his assets and the amount they actually received.

## I.

On September 22, 1997, Feldman filed a Chapter 7 personal bankruptcy petition, 11 U.S.C. § 101 et seq., in the United States Bankruptcy Court for the Eastern District of Pennsylvania, seeking relief from $205,253.30 in credit card debt he had incurred. Feldman listed his personal property as valued at $5,845 and his real estate holdings as valued at $325,000. On December 17, 1997, Feldman amended the original bankruptcy schedule, listing his personal property at $7,445. He testified at a meeting of creditors on January 5, 1998 that he had fully and accurately disclosed all real and personal property he owned.

A bankruptcy trustee was appointed who learned that Feldman had an ownership interest in a number of valuable pieces of art and other antiques that he had not listed on the bankruptcy schedule. These assets included "The Howard and Catherine Feldman Collection," a collection of Chinese treaty port paintings, American and English furniture, decorations, folk art, clocks, rugs and phrenological material, which eventually sold at a Sotheby's auction for $1,207,325 on October 9, 1998 (netting $910,870.25 after commission). Between September 22, 1996 and June 8, 1999, Feldman and his wife also sold numerous other items through the Sotheby's and Christie's auction houses for a total of $231,272.46. The proceeds from these sales were wired to the Feldmans' joint bank account.

The bankruptcy trustee also learned that Feldman owned two Jaguar automobiles in his own name that he had not declared on the bankruptcy schedules. Feldman produced a letter of sale, indicating that he had sold the vehicles to a man named Daniel Krause, yet Feldman retained possession of and title to the cars (Feldman claimed that he did so because Krause did not want his wife to find out that he had purchased them). Krause denied that he had purchased the vehicles. Feldman entered into an agreement with the Chapter 7 trustee to buy one of the cars for $5,000 and the other was sold at auction for $16,000 (when a bankruptcy petition is filed, all the property that belonged

to the debtor automatically becomes the property of the bankruptcy estate pursuant to 11 U.S.C. §§ 541 and 1306).[1]

On July 28, 1998 the Bankruptcy Court granted Feldman's motion to convert the case to Chapter 13. On August 11, 1998, Feldman amended the bankruptcy schedule to reflect the findings of the Chapter 7 bankruptcy trustee, disclosing personal property valued at $741,900, the bulk of which he claimed was exempt from his creditors because it was owned as tenants by the entireties with his wife. However, at a November 24, 1998 creditors' meeting, Feldman admitted that he had sold property at a Sotheby's auction for approximately $911,000. He also stated that although he had initially listed his home, which he owned with his wife, as valued at $325,000, the house had been listed for sale at $795,000 (but later reduced to $695,000). The house eventually sold for $550,000 on April 4, 2000 (using this figure, the government contended before the District Court that Feldman had undervalued his home by $225,000). Feldman nonetheless claimed that he was entitled to a discharge in bankruptcy because the personal property and real estate was also owned by his wife and was thus totally exempt from bankruptcy. Based on the undervaluation of his home and the continued concealment of assets, the bankruptcy trustee objected to the exemptions and to Feldman being discharged.

Upon motion by the bankruptcy trustee, the case was reconverted to a Chapter 7 proceeding. The bankruptcy trustee eventually entered into a settlement agreement with Feldman, whereby he would pay $50,000 to settle the objections to the claimed exemptions. It is not clear from

---

1. Feldman does not claim that the Jaguar vehicles were owned by him and his wife jointly. As such, his explanation that he did not intend for his creditors to lose money when he failed to report the rest of the property does not apply to the Jaguar vehicles. Thus, the only plausible explanation for Feldman's concealment of the Jaguar vehicles is that he intended to keep them out of the reach of his creditors. It appears that Feldman must have intended to cause his creditors a loss of at least the value of the cars. We note, however, that there may have been no actual loss from the concealment of the vehicles, since the creditors were paid $21,000 for the vehicles (assuming that this amount represents their value, which is not clear from the record).

the record why the bankruptcy trustee decided that it was in the best interests of the creditors to settle (we can only speculate that the trustee was concerned that the Bankruptcy Court would exclude the jointly owned property, even though it was initially concealed, or that the cost of continued litigation would reduce the amount of money available for the creditors). The settlement amount was added to the $21,000 from the sale of the Jaguar vehicles. Feldman was ultimately discharged from the rest of his debt.

In the end, Feldman paid $71,000 to settle his debt. Fees were subtracted, leaving Feldman's creditors with $61,292.38. Although Feldman had filed for bankruptcy protection in a greater amount, the proofs of claim that were filed totaled only $175,768.91. Thus, the amount of unpaid proofs of claim totaled $114,476.53, resulting in a distribution of approximately 34% of the amount owed to Feldman's creditors.

On March 19, 2002, Feldman pled guilty to four counts of bankruptcy fraud in the District Court of the Eastern District of Pennsylvania: Count One alleged that Feldman concealed bankruptcy assets in violation of 18 U.S.C. § 152(1); and Counts Two through Four alleged that Feldman made false declarations in a bankruptcy proceeding in violation of 18 U.S.C. § 152(3). The government told the Court that Feldman had concealed personal property with a total value of $1,459,597.40. At sentencing, the government urged that Feldman be given an eight offense level increase in the Sentencing Guidelines calculation pursuant to U.S.S.G. § 2F1.1(b)(1)(I), for losses more than $200,000, since, in its submission, he had intended to cause a loss of $203,784.30 (this included the amount of debt from which Feldman sought to be discharged, including fees). Feldman urged that there should be no offense level increase since the government could not prove that he intended or actually caused any loss. Alternatively, Feldman claimed that his offense level should only be increased by seven levels, pursuant to U.S.S.G. § 2F1.1(b)(1)(H), for losses more than $120,000,

since the amount of loss would not exceed $200,000 without the addition of administrative costs.[2]

The District Court conducted two sentencing hearings; a second hearing was scheduled to allow the parties to submit supplemental material. The District Court made no finding as to the exact amount of loss, since Feldman's final offense level would be fifteen (a guidelines range of eighteen to twenty-four months) whether his offense level was increased by seven or eight offense levels. Feldman had a base offense level of six, U.S.S.G. § 2F1.1, plus seven offense levels (or eight) for the loss, plus two offense levels for more than minimal planning, U.S.S.G. § 2F1.1(b)(2), plus two offense levels for fraud during a bankruptcy proceeding, U.S.S.G. § 2F1.1(b)(4)(B), minus two offense levels (or three if the offense level had been increased by eight) for acceptance of responsibility. U.S.S.G. §§ 3E1.1(a) and (b). If Feldman's offense level was increased by eight offense levels, it would have been decreased by three offense levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b), and if his offense level was increased by seven offense levels, it would have been decreased by two offense levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).

In its sentence, the District Court ordered that Feldman be remanded to the custody of the Bureau of Prisons for fifteen months on Count One, and then receive an additional three years of supervised release. The District

---

2. U.S.S.G. § 2F1.1 provides the specific number of offense levels to add to the defendant's base offense level once the amount of loss has been calculated:

    (a) Base Offense Level: 6

    (b) Specific Offense Characteristics

        (1) If the loss exceeded $2,000, increase the offense level as follows:

| Loss (Apply the Greatest) | Increase in Level |
|---|---|
| . . . | |
| (H) More than $120,000 | add 7 |
| (I) More than $200,000 | add 8 |

Court imposed the same term for Counts Two through Four, to run concurrently with Count One. It also fined Feldman $30,000 and imposed a special assessment of $400. The District Court gave the parties time to reach a settlement on the restitution amount. After it became clear that no settlement was forthcoming, the District Court ordered restitution in the amount of $138,671.69 for the actual loss to Feldman's creditors. It is not clear from the record how this figure was calculated. However, we need not determine how the District Court decided on this amount since we will remand on the restitution issue for other reasons.

Feldman timely appealed and the District Court granted his motion for release pending appeal. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We review the factual determinations underlying the application of the Sentencing Guidelines for clear error, but we have plenary review over the legal determinations. *See United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001). Likewise, "we exercise plenary review over whether an award of restitution is permitted under law, [but] we review specific awards of restitution for abuse of discretion." *United States v. Crandon*, 173 F.3d 122,125 (3d Cir. 1999).

## II.

We will first discuss the restitution issue, which turns on the determination of actual loss. This will obviate the need to discuss actual loss in conjunction with the sentencing issue.

### A.   Restitution

Under the Victim Witness Protection Act (as amended by the Mandatory Victims Restitution Act "MVRA"), the amount of restitution awarded is limited to the amount of actual loss caused by the defendant's crime. 18 U.S.C. §§ 3663 and 3664. Feldman contends that the District Court erred by awarding restitution since his creditors incurred no actual loss because the property that he did

not report (the proceeds from the Sotheby's and Christie's sales and the amount by which he undervalued his home) would not have been reachable by his creditors even if he had disclosed it because it was held by him and his wife as tenants by the entireties. In Feldman's submission, this result follows from Section 522 of the Bankruptcy Code, 11 U.S.C. § 522, which allows the debtor to utilize state law bankruptcy exemptions and the fact that in Pennsylvania, property owned by both husband and wife as tenants by the entireties is not reachable by the creditors of only the husband or the wife. *See* 42 Pa. C.S.A. § 8123.

The credit card debt that triggered the bankruptcy was incurred in Feldman's name alone, while the assets he concealed (excluding the Jaguar vehicles) were owned by both Feldman and his wife. The government does not concede that the property would have been exempt from bankruptcy if Feldman had acted lawfully. Additionally, the government asserts that in light of the large amount of property owned by Feldman and his wife (even if exempt), the bankruptcy trustee may not have recommended discharge.

Instead of holding a hearing to determine whether or not the property would have been exempt if Feldman had acted lawfully, or whether the bankruptcy trustee would have recommended a discharge, the District Court ordered the parties to submit briefs discussing the government's proposition that in bankruptcy court, "if you fail to disclose something you then lose the right to exempt it from the estate." The Court reasoned that if this proposition was supported by caselaw, "it makes a very easy disposition" of the determination of loss.

The District Court was ultimately persuaded by the government's assertion that in bankruptcy proceedings, a debtor is not entitled to claim an exemption in bankruptcy property that he fraudulently concealed; under this view, creditors can reach property that would have otherwise been exempt. *See In re Glass*, 60 F.3d 565 (9th Cir. 1995) (affirming a decision of the Bankruptcy Appellate Panel which did not allow the debtor to voluntarily amend his bankruptcy schedule and claim a homestead exemption where the debtor had concealed the property); *Redmond v.*

*Tuttle*, 698 F.2d 414, 417 (10th Cir. 1983) ("Property fraudulently transferred out of an estate and later recovered by the trustee cannot then be exempted by the debtor."); *Matter of Doan*, 672 F.2d 831, 833 (11th Cir. 1982) ("[C]oncealment of an asset will bar exemption of that asset."); *In re Yonikus*, 966 F.2d 866, 872 (7th Cir. 1993) (agreeing with *Doan*). The District Court concluded that this logic should extend to the determination of actual loss, reasoning that a debtor who has been dishonest in concealing assets should not be allowed to use the exemption provision as a shield. Thus, the Court determined that the calculation of actual loss would not exclude the property Feldman claims was exempt.

Feldman argues that the District Court erred by relying on the caselaw cited above because those cases do not stand for the proposition "that the debtor is automatically or by operation of law barred from availing himself of the exemptions in the disputed property." However, we do not believe that it is necessary at this juncture to determine whether or not the law of this Circuit prevents debtors in bankruptcy proceedings from claiming exemptions for assets that they had initially concealed, though we note that none of the cases cited by the government deals with property exempt because it is held by two people as tenants by the entireties, only one of whom has filed a bankruptcy petition.

What is critical for us is the question whether the loss of an exemption in a bankruptcy proceeding controls the determination of actual loss for restitution (or sentencing) purposes. The Bankruptcy Court may have denied the exemptions based on Feldman's concealment, making more money available to Feldman's creditors. However, that does not necessarily mean that the District Court should have included the concealed but arguably exempt assets in the calculation of actual loss for the determination of restitution. Instead, the concept of actual loss attempts to determine the harm caused by the defendant's crime. *See Yeaman*, 194 F.3d at 457 ("[T]he actual loss determination must be predicated on the harm caused by [the defendant's] offenses." (quoting *United States v. Evans*, 155 F.3d 245, 253 (3d Cir. 1998)). This is very different from

what occurs in a bankruptcy proceeding where the bankruptcy court is concerned with the rights of the creditors as well as the debtor (thus, the bankruptcy court may "tilt the scales" in favor of the creditors when the debtor has acted improperly).

Moreover, the logic behind denying exemptions for assets initially concealed by the debtor is to deter the concealment of assets. In the restitution context, where the district court is attempting to "make whole" the creditors by determining actual loss, deterrence is not a factor. *See United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001) ("The purpose of restitution under the MVRA is to compensate the victim for its losses and, to the extent possible, to make the victim whole."). Thus, we do not think that we can apply the reasoning behind denying exemptions for assets concealed in a bankruptcy proceeding to the determination of actual loss for restitution (or sentencing) purposes.

The government essentially argues that Feldman committed a crime and his creditors were not paid the full amount owed to them, so the actual loss must be the difference between what the creditors were owed and what they were paid. However, this is not a proper calculation of the harm caused by Feldman's *crime. See United States v. Badarocco*, 954 F.2d 928, 942 (3d Cir. 1992) ("[A]ny award of restitution must be based on losses to the victim that were caused by the counts of which the defendant was convicted or to which he pled guilty.") It may be the case that Feldman caused his creditors to lose money because he filed for bankruptcy, but this in itself is part of a lawful regime. Creditors are often not paid in full when a debtor is discharged in bankruptcy; otherwise a debtor would not need to file a petition for bankruptcy. Instead, to determine harm (and thus actual loss), we must compare what actually happened with what would have happened if Feldman had acted lawfully.[3]

---

3. Indeed, it may be that Feldman's creditors received a larger payment than they would have if Feldman had acted lawfully, for if Feldman had acted honestly and the joint assets were determined to be exempt, his creditors might not have received the $50,000 that Feldman paid in settlement.

13

We will therefore vacate the judgment awarding restitution and remand so that the District Court can determine actual loss and thus the proper amount of restitution (if any) that should be awarded to Feldman's creditors. The District Court should consider whether Feldman would have been entitled to an exemption for property owned by him and his wife as tenants by the entireties if he had acted lawfully and whether the bankruptcy trustee would have recommended discharge, even if the property was exempt from bankruptcy, in light of the large amount of property owned by Feldman and his wife.

## B. The Sentencing Guidelines Calculation

Since the District Court uses the greater of actual or intended loss when imposing a sentencing enhancement, *see* U.S.S.G. § 2F1.1, application note 8, we must affirm the District Court's imposition of a seven (or eight, as discussed *supra*) offense level increase if that increase was based on a finding that Feldman intended a loss (greater than the amount of actual loss) even though we concluded above that the District Court erred in determining the actual loss caused by Feldman's crime.[4] Indeed, a defendant can be sentenced based on his intended loss even if it was impossible for any loss to have occurred. *See United States v. Geevers*, 226 F.3d 186, 195 (3d Cir. 2000) ("[W]e join the majority of courts of appeals in holding that impossibility is not in and of itself a limit on the amount of intended loss for purposes of calculating sentences under the guidelines.").[5] Thus, even if Feldman could not have caused any loss by concealing exempt assets, he could still be subject to a sentencing enhancement if he *thought* he would cause a loss by concealing the assets.

4. This case is governed by the 2000 version of the Sentencing Guidelines.

5. We note that a later version of the Sentencing Guidelines defines intended loss as "includ[ing] intended pecuniary harm that would have been impossible or unlikely to occur (*e.g.* as in a government sting operation, or an insurance fraud in which the claim exceed the insured value.)" U.S.S.G. § 2B1.1, application note 2.

Feldman claims that the government failed to meet its burden of proving by a preponderance of the evidence that he intended to cause a loss to his creditors; he asserts that once he presented evidence suggesting that he thought his creditors would be unaffected by the concealment of what he believed to be exempt assets, the government was obligated to present evidence to the contrary. *See United States v. Hayes*, 242 F.3d 114, 119 (3d Cir. 2001) (holding that the government has the burden of proving loss); *Napier*, 273 F.3d at 279 ("The government bears the burden to prove by a preponderance of the evidence the facts in support of a sentence enhancement." (citing *Evans*, 155 F.3d at 253)).

The government argues that it met the burden of proof and urges us to adopt a bright line rule that "[i]ntended loss includes the value of assets concealed from creditors and the bankruptcy court." The government maintains that by filing a petition for bankruptcy, Feldman demonstrated his intent to be discharged from the debt he owed to the credit card companies; Feldman also admittedly concealed assets to "speed along" the process. Thus, the argument continues, Feldman committed a crime with the intent that it would lead to the discharge of the entire amount of debt owed.

Once again the government cites a string of cases from other jurisdictions, which, it asserts, stands for the proposition that intended loss is the amount of debt from which the defendant sought to be discharged. *See United States v. Holland*, 160 F.3d 377, 381 (7th Cir. 1998) ("In imposing sentence, the district judge found that the acts of bankruptcy fraud were an attempt to conceal . . . assets in order to obtain a discharge of $454,000"); *United States v. Graham*, 60 F.3d 463, 468 (8th Cir. 1995) ("The fact that his scheme was flawed does not persuade us that he intended for the bankruptcy estate to lose any less than the amount he stood to gain had his deception been better executed."); *United States v. Shadduck*, 889 F. Supp. 8, 10 (D. Mass. 1995) ("[The defendants] intentionally concealed assets from the Bankruptcy Court and their creditors, and the value of those assets is properly considered intended loss."). *See also United States v. Gunderson*, 55 F.3d 1328

(7th Cir. 1995); *United States v. Edgar*, 971 F.2d 89 (8th Cir. 1992). We do not believe, however, that these cases stand for the proposition that intended loss is always the amount of debt from which the defendant sought to be discharged, and the cited cases do not involve a claim by the defendant that he thought the assets he concealed were exempt. We think our decision in *United States v. Kopp*, 951 F.2d 521 (3d Cir. 1991), is instructive on this point.

*Kopp* clarified the meaning of intended loss under the Sentencing Guidelines where the defendant pled guilty to procuring a bank loan by fraud. We held that the defendant's intent to repay a fraudulently obtained loan should be considered when determining the amount of intended loss. In *Kopp*, it appeared that the defendant had intended to repay (with interest) the fraudulently obtained loan. The defendant in *Kopp* lied about the rental income from his business, and the bank indicated that it would not have loaned him the money if he had been honest, but he did give collateral for the loan and made payments on it before he defaulted. *Id.* at 536. In that case, we did not adopt a bright line rule that intended loss is the amount of the loan the defendant fraudulently obtained. We could have accepted the argument that the defendant intended to obtain a loan and accomplished that goal by committing fraud, so that he intended to cause a loss of the amount of the loan (this is essentially what the government asks us to do here), but we did not because we concluded that "[i]ntended loss refers to the defendant's subjective expectation." *See Yeaman*, 194 F.3d at 460 (citing *Kopp*, 951 F.3d at 529-531).

The government asserts that in *United States v. Shaffer*, 35 F.3d 110, 115 (3d Cir. 1994), we limited the holding in *Kopp* to situations "where misrepresentations are accompanied by an intent to perform lawfully." However, *Shaffer* involved only the calculation of actual loss (in particular the question whether actual loss is determined at the time of sentencing or when the crime was detected) and the panel in *Shaffer* only discussed *Kopp*'s language concerning actual loss. Thus, we do not believe that *Shaffer* limits our use of *Kopp* to determine the meaning of intended loss. *Id.* at 113 ("The present case does not involve an intended loss.").

The essential flaw in the government's argument is in its failure to recognize that Feldman must have intended that a loss be caused *by the commission of a crime*. It is not enough that Feldman intended to be discharged from debt in general; indeed that is the whole point of filing a petition for bankruptcy. Instead we must look at what Feldman sought to gain from committing the crime. If Feldman honestly thought that the only thing he would gain from the concealment of assets was a more speedy discharge in bankruptcy, then he arguably did not intend any monetary loss to his creditors. In the case at bar, as in *Kopp*, the District Court had to carefully examine what Feldman intended to happen when he concealed assets.

That said, we do not believe that to meet its burden of proof the government must disprove Feldman's claim that he thought his creditors would receive the same payment if he concealed assets. We conclude that Feldman's intent can be inferred from the fact that he concealed a large amount of assets; it is appropriate for the District Court to consider the reason why most people would conceal assets and determine that it is simply unbelievable that Feldman would hide over a million dollars in assets only to achieve a faster discharge. Most people would not risk committing a crime to make the bankruptcy process more efficient. *See Geevers*, 226 F.3d at 192-93 ("The District Court must determine [the defendant's] subjective intention, and it can draw reasonable inferences from the nature of the crime that he sought to perpetrate. . . . [T]hen [the defendant] is free to come forward with evidence to demonstrate that he actually intended something less."). Moreover, the fact that Feldman concealed two Jaguar vehicles that were not even arguably exempt suggests that he concealed all of the assets to prevent his creditors from receiving payment.

The District Court expressed disbelief of Feldman's stated intent during the initial sentencing hearing:

> [W]e have to assume that no one would rob a bank that they knew had no money in it, right? I mean that's what he did here. He undervalued property because he was trying to defraud his creditors . . . not because he believed that had he listed it it wouldn't be part of the estate. I mean that seems to me — I don't see how

> anybody could argue to the contrary. So he intended that the estate be decreased by the amount that he was failing to disclose, right? That was his intent. . . . People don't do things like that just to simplify the procedure.

The District Court never made a determination of whether the assets Feldman claimed were held by him and his wife as tenants by the entireties would have been exempt if he had acted lawfully, which would bear upon the credibility of Feldman's claim that he did not intend to cause a loss. However, loss under the Sentencing Guidelines is determined by calculating the greater of actual or intended loss, and intended loss includes loss that was impossible. *See Geevers*, 226 F.3d at 195. We can therefore affirm the District Court's finding that the government had met its burden of proving by a preponderance of the evidence that Feldman intended to cause a loss of the full amount of debt owed, even though we concluded that the District Court erred in determining actual loss. The District Court impliedly found that Feldman intended to inflict a loss in the amount of the entire debt from which he sought to be discharged and that finding is supported by assumptions about the nature of Feldman's crime and the fact that he concealed other assets that were not even arguably exempt from bankruptcy. Therefore the sentence imposed must be upheld.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court as to the sentence imposed, but we will vacate the judgment insofar as it contains the restitution award and remand for further consideration of actual loss.

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*