NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1251
_____

UNITED STATES OF AMERICA

v.

MICHAEL J. FREE,
                    Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cr-00019-001)
District Judge:  Hon. Mark R. Hornak

_____

Submitted Under Third Circuit LAR 34.1(a)
October 12, 2017

Before:  CHAGARES, JORDAN, and FUENTES, *Circuit Judges.*

(Filed: November 7, 2017)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

Michael Free appeals his resentencing in this bankruptcy fraud case, based on the

District Court's determination of a "loss amount" to his creditors.  Free contends that the

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

loss amount should be zero, while the government argues that the District Court correctly calculated the loss amount as being more than $400,000. In an earlier appeal of this case, we remanded "to allow the District Court to determine what, if any, loss to creditors Free intended, or the gain he sought by committing the crime." *United States v. Free*, 839 F.3d 308, 324 (3d Cir. 2016). Because the District Court's factual findings as to Free's intended loss to creditors are not clearly erroneous, we will affirm.

## I. BACKGROUND

This appeal continues from the point that our earlier opinion in the case left off. *Id.* The underlying facts are described in detail there. *Id.* at 310-18. We will repeat only those facts pertinent to this appeal.

Free initially filed for Chapter 13 bankruptcy, which permits a debtor to reorganize debts. *Id.* at 310. He disclosed an accounting of his assets and debts on several forms. *Id.* The Bankruptcy Court later converted the proceeding into a Chapter 7 action, which liquidates and distributes a debtor's assets to creditors. *Id.* at 310-11. When Free initially filed for bankruptcy, he disclosed assets that exceeded his debts by several hundred thousand dollars. *Id.* at 310.

During a creditors' meeting, Free "indicated that he was 'trying to' sell weapons he owned by 'put[ting] them on the Internet.'" *Id.* at 311 (alteration in original) (citation omitted). The trustee, assigned to administer the case and liquidate the debtor's nonexempt assets, immediately told Free to stop that effort. *Id.* Over the course of the bankruptcy, Free "became increasingly uncooperative with [the trustee] and progressively more disrespectful towards the Bankruptcy Court." *Id.* Investigations by local sheriff's

2

deputies and the FBI uncovered evidence that, during the pendency of the Chapter 7 bankruptcy, Free had sold firearms outside the bankruptcy proceedings and was concealing assets from the bankruptcy estate, including numerous firearms. *Id.* at 312-13.

Federal prosecutors initiated a criminal case against Free for committing bankruptcy fraud. *Id.* at 313. The charges related to false statements and concealment of assets. *Id.* at 313-14. "After a five-day trial, a jury convicted Free on all counts." *Id.* at 314.

The U.S. Sentencing Guidelines ("guidelines") required the District Court to determine the loss caused by Free's crimes. *Id.* at 314; *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B1.1(b). At Free's first sentencing hearing, the government argued that the loss amount should be based on the value of the firearms that Free concealed during the bankruptcy. *Free*, 839 F.3d at 314-15. But Free countered that, because his assets exceeded liabilities and all creditors were paid in full, the loss amount should be zero. *Id.* at 315. The District Court agreed with the government, calculating a loss amount of more than $1,000,000 and adding 14 additional levels to the total offense level.[1] *Id.* at 317; *see also* U.S.S.G. § 2B1.1(a)-(b). Ultimately, the District

---

[1] In *Free*, we addressed two issues in that sentencing calculation. *Free*, 839 F.3d at 317. First, the District Court applied the 2014 guidelines. *Id.* at 314 n.39. Under those guidelines, for a loss amount of "more than $400,000 ... add 14 [levels]" and for "more than $1,000,000 ... add 16 [levels]." U.S.S.G. § 2B1.1(b)(1)(H)-(I) (U.S. Sentencing Comm'n 2014). Second, the District Court found that the loss amount was least $1,000,000, which would warrant a 16-level increase according to § 2B1.1(b)(1)(I) of the 2014 guidelines, but the Court only added a 14-level enhancement. *Free*, 839 F.3d at 317. Those actions of the District Court are not at issue now.

Court sentenced Free to 24 months of incarceration and 3 years of supervised release. *Id.* Free appealed the sentence. *Id.* at 318.

On appeal, we determined that the District Court had not made essential factual findings as to whether Free intended to harm his creditors. *Id.* at 323. Thus, we remanded "to allow the District Court to determine what, if any, loss to creditors Free intended, or the gain he sought by committing the crime." *Id.* at 324.

On remand, the Court accepted supplemental briefing from both Free and the government. Upon considering the record and our directive, the District Court issued Tentative Findings and Conclusions. The Court calculated the intended loss as being more than $400,000 and again concluded that the intended loss warranted a 14-level adjustment. It rejected Free's contention that the loss amount should be zero. In the alternative, the Court noted that, if the loss amount were zero, it would either depart or vary upward from the guidelines' recommendation to arrive at the same additional 14-level adjustment.

On January 26, the District Court held a second sentencing hearing for Free, and, the next day, entered an Amended Judgment based on its Tentative Findings and Conclusions.[2] The Court again sentenced Free to 24 months of imprisonment and 3 years

---

In sum, the District Court calculated a base offense level of 6, loss enhancement of 14, and bankruptcy fraud enhancement of 2. *Id.* Free's total offense level was 22, resulting in a guidelines range of 41 to 51 months' imprisonment. *Id.* The District Court varied downward, concluding that a total offense level of 16 was "more appropriate." *Id.*

[2] The District Court adopted its Tentative Findings and Conclusions "as corrected." (Doc. 142-1 at ¶1.) The corrections were: "The loss amounts set forth at page 3, line 9, and page 6, line 15, of that document are corrected to be 'in an amount of

4

of supervised release, but added a fine of $35,000.  It imposed an additional fine at resentencing after concluding that the fine would not pose a risk to the estate, the creditors, or the administrative expenses.  Free now appeals, once again, the District Court's findings and conclusions as to the loss amount calculation.

## II.    DISCUSSION[3]

### A.    Standard of Review

In our earlier opinion, we described the standard we apply when reviewing a district court's calculation of a loss amount for the purposes of sentencing:

> In a fraud case, the government bears the burden of establishing the amount of loss for purposes of sentencing by a preponderance of the evidence.  When calculating the loss amount, a district court need only make a reasonable estimate of the loss incurred.  We review a district court's factual findings at sentencing for clear error, including factual findings supporting the loss calculations ... under Guidelines § 2B1.1.    Alternatively, when the calculation of the correct Guidelines range turns on an interpretation of what constitutes loss under the Guidelines, we exercise plenary review.

*Free*, 839 F.3d at 319 (footnotes, citations, quotation markes, and brackets omitted).  "A District Court's finding of intended loss is one of fact, and will not be disturbed unless clearly erroneous."  *United States v. Himler*, 355 F.3d 735, 740 (3d Cir. 2004).

---

at least more than $400,000.'  Further, to the extent the 2016 Manual applies, all references to 'at least $550,000,' are corrected to 'more than $550,000.'  Such corrections are fully consistent with the findings and conclusions otherwise set forth." (Doc. 142-1 at ¶1.)

[3] The District Court had jurisdiction under 28 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Here, the District Court calculated the loss amount based on Free's concealment of assets during the bankruptcy. The Court determined that the intended loss was more than $400,000. This is a factual finding, so we review it for clear error.

## B.     Loss Calculation

Free argues that the District Court erred in calculating the loss amount because there was no actual loss or intended loss to any creditor of the bankruptcy estate, nor evidence that he intended to gain by his unlawful actions or omissions at the expense of his creditors. He reasons that, because his assets exceeded his liabilities and all creditors were paid in full, he could not have caused an actual or intended loss to any creditor. He submits that his motive for concealing assets was personal, not borne of any intent to cause harm to his creditors. Thus, he argues, the loss amount should be zero. We disagree.

The guidelines state that "loss [under subsection (b)(1)] is the greater of actual loss or intended loss."[4] U.S.S.G. § 2B1.1 cmt. n.3. In our earlier opinion in this case, we interpreted "loss" under the guidelines as "pecuniary harm suffered by or intended to be suffered by victims." *Free*, 839 F.3d at 323. Even if no actual loss could possibly have occurred, a district court can sentence a defendant based on the defendant's intended loss

---

[4] "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i) (emphasis omitted). "'Intended loss' (I) means the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." *Id.* cmt. n.3(A)(ii).

to a victim. *United States v. Feldman*, 338 F.3d 212, 221 (3d Cir. 2003). A district court can infer the loss that a defendant intended to inflict on a victim from the defendant's conduct, *see id.* at 223-24 (inferring defendant's intent from his concealment of large amount of assets), and the nature of the crime that the defendant sought to commit, *United States v. Greeves*, 226 F.3d 186, 192 (3d Cir. 2000). When a defendant has had many opportunities to come forward and admit his wrongdoing but has never done so, a court can properly find that the defendant intended to cause a loss.[5] *See Himler*, 355 F.3d at 740-41 (finding a defendant, who passed counterfeit checks to purchase a condominium but claimed no intention of actually possessing the condominium, as intending to cause a loss).

The District Court found no actual loss to Free's creditors: "No matter [Free's] intent and duplicity, it appears clear that there will be no actual loss to the creditors or the administration of the estate, all of the expenses of administration will be paid out of [Free's] assets, and there will [be] some leftovers." (Doc. 142-1 at ¶6.) But, finding no actual loss did not end the District Court's inquiry into a loss amount under the guidelines. Even though it found no actual loss to creditors, the Court rightly understood that the guidelines still require consideration of the intended loss. Thus, the Court shifted attention to that issue.

---

[5] The court must also look to "the gain that resulted from the offense as an alternative measure of loss[, but] only if there is a loss ... [that] reasonably cannot be determined." U.S.S.G. § 2B1.1 cmt. n.3(B).

7

It found that Free in fact intended a loss to his creditors. Applying the guidelines and our opinion in *United States v. Feldman*, the Court found that Free "purposely intended and sought to inflict pecuniary harm in an amount of at least [more than] $400,000 on the bankruptcy estate and ultimately the creditors by his active concealment of multiple assets of the bankruptcy estate, most specifically his various and numerous firearms, real estate and vehicles."[6] (App. at 1250); *see Feldman*, 338 F.3d at 223.

The District Court inferred Free's intentions and purposes – "namely to inflict pecuniary harm in the amounts noted on the creditors and the bankruptcy estate" – based on his conduct. (App. at 1251); *see also Feldman*, 338 F.3d at 223 (concluding that a district court may infer a defendant's intentions based on the defendant's conduct). That inference of intent was based on the magnitude of the assets concealed, the lengths of the deceit Free employed to conceal them (despite clear warnings from the trustee and Bankruptcy Court), and the risk that the disclosed assets might not cover the expenses of administering the bankruptcy. Like our analysis in *Feldman*, in which we inferred a defendant's intent to cause a loss to creditors from the defendant's concealment of a large amount of assets, the District Court here properly inferred Free's intent to harm creditors based on his concealment of several hundred thousand dollars of assets. *See Feldman*, 338 F.3d at 223. Furthermore, like the facts in *United States v. Himler*, in which a defendant had many opportunities to come forward to admit wrongdoing but did not do so, Free had many chances to disclose all of his assets to the Bankruptcy Court but never

---

[6] The Court used the words "at least" but clearly meant "more than," as expressed in the written judgment. (Doc. 142-1 at ¶1.)

8

did so. *See Himler*, 355 F.3d at 740. Because Free persisted in concealing his assets, the District Court did not err in finding that he intended to cause a loss to creditors.

Although Free argues that he could not have intended a loss because his assets exceeded his debts, the guidelines instruct otherwise. They specifically state that intended loss "includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." U.S.S.G. § 2B1.1 cmt. n.3(A)(ii). A district court can sentence a defendant based on the intended loss even if no actual loss could have occurred. *Feldman*, 338 F.3d at 221.

Free sought to avoid distribution of the value of certain assets to creditors by concealing those assets. Because a finding of intended loss is one of fact, it must be upheld on appeal absent clear error. *Himler*, 355 F.3d at 741. The District Court determined the intended loss amount by summing valuations of converted items as set out in the Presentence Report, testimony, and Government Sentencing Memorandum.[7] Those valuations amount to more than $400,000. There was thus no error in concluding that Free intended a loss of more than $400,000 to creditors.

## III.    CONCLUSION

For the foregoing reasons, we will affirm the sentence imposed in the Amended Judgment.

---

[7] Those amounts were $63,760, $37,070, $40,995, $16,500, $205,995, $640,000, as well as other valuations set out in the record and summarized in the Government Sentencing Memorandum.

9