[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-10304

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 26, 2004
THOMAS  K. KAHN
CLERK

D. C. Docket No. 02-20378 CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RIGOBERTO CARRASCO,
BIENVENITO JUAN RUIZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(August 26, 2004)**

Before BLACK, BARKETT and STAHL[*], Circuit Judges.

PER CURIAM:

_____

[*] Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

After a jury trial, Appellant Rigoberto Carrasco was convicted of attempt to possess with intent to distribute five kilograms or more of cocaine and sentenced to 240 months' imprisonment. Appellant Bienvenito Ruiz was convicted of conspiracy to possess with intent to distribute five kilograms or more of cocaine and attempt to possess with intent to distribute five kilograms or more of cocaine,[1] and sentenced to life imprisonment. Appellants appeal their convictions and sentences. We reverse Carrasco's conviction, but affirm Ruiz's conviction and sentence except insofar as we remand for the district court to amend the judgment to reflect accurately Ruiz's offenses of conviction.

## I. BACKGROUND

The charges against Appellant Carrasco and Appellant Ruiz stem from a drug transaction set up by a confidential informant, Maria Nuñez. In cooperation with the Drug Enforcement Agency (DEA), Nuñez contacted her brother-in-law, codefendant Rodriguez, to propose the theft of 40 kilograms of cocaine from a woman in Miami. Rodriguez eventually agreed, and the DEA arranged for a warehouse to serve as the location for the robbery.

---

[1] Ruiz was charged with, and convicted by a jury of, attempt to possess five kilograms or more of cocaine. The judgment, however, states that Ruiz was convicted of possession with intent to distribute five kilograms or more of cocaine. Although Ruiz did not raise this issue, we remand his case for the sole purpose of permitting the district court to amend the judgment against him to reflect accurately the offenses of conviction.

On April 17, 2002, Rodriguez and codefendant Ceballos met Nuñez at the warehouse, where DEA agents arrested them. Rodriguez and Ceballos were carrying weapons.

Rodriguez immediately agreed to cooperate with law enforcement officials by telephoning the individuals he planned to have sell the cocaine for him. Rodriguez called Appellant Carrasco, who congratulated Rodriguez. Rodriguez asked Carrasco to pick up the drugs and bring money with him. Carrasco responded that the money was squared away. Carrasco later arrived to meet Rodriguez, and DEA agents arrested him. Carrasco waived his rights and said he knew people in the drug business and would be able to assist the DEA. Carrasco also stated he had gone to meet Rodriguez so he could "do work" for Rodriguez.

Rodriguez also called codefendant Sierra and left a message for him. When the DEA agents brought Rodriguez to prison, they gave Rodriguez's cell phone to Nuñez. Nuñez spoke to Sierra about the purported 40 kilograms of cocaine. Once, when Nuñez called Sierra, Appellant Ruiz answered the phone and identified himself as "Juanito," Sierra's friend. After a few discussions with Sierra, Nuñez arranged a meeting with him so Sierra could examine the cocaine. When asked by Nuñez whether he would be arriving at the meeting with Appellant Ruiz only, Sierra responded in the affirmative.

Sierra and Appellant Ruiz arrived at the appointed time and place to meet with Nuñez. Sierra and Ruiz got out of the car in which they had arrived and talked with Nuñez outside. Nuñez discussed how much cocaine she had and, when Sierra asked about the quality of the cocaine, Nuñez responded that it was good. After Sierra stated the cocaine would sell, and Sierra and Appellant Ruiz told Nuñez that no others were coming to the meeting, agents arrested Sierra and Ruiz.

At trial, Appellant Carrasco testified on his own behalf and denied ever dealing drugs with Rodriguez. Carrasco testified that when Rodriguez asked him to take part in a drug deal, he refused.[1] Carrasco testified that, after his conversation with Rodriguez, he learned Rodriguez had been using drugs, and out of concern he had contacted Rodriguez's brother who said he had been looking for Rodriguez for days. Carrasco further testified he went to meet Rodriguez on the day of their arrests because he wanted to find Rodriguez and help him with his drug problem.

In rebuttal, the Government presented evidence of Appellant Carrasco's prior involvement in the drug trade. More specifically, the Government presented

---

[1] Rodriguez testified at trial that he had asked Appellant Carrasco to participate in the robbery, but Carrasco had declined and instead expressed an interest in selling the stolen cocaine.

testimony from Ceballos that, in 1989 or 1990, Appellant Carrasco had a tire business that served as a front for a drug operation. Ceballos further testified that he (1) attended a meeting at the business about a drug ripoff, (2) purchased ounce amounts of cocaine from Appellant Carrasco on at least twelve occasions, (3) recalled seeing Appellant Carrasco adding cutting agents to drugs, and (4) could recall at least three occasions on which he had seen Carrasco give money to Rodriguez in amounts ranging from $2000 to almost $5000 for cocaine Rodriguez had fronted to Carrasco. When Appellant Carrasco objected to Ceballos's testimony on Federal Rule of Evidence 404(b) notice grounds, the district court overruled the objection. The district court initially stated Ceballos's testimony was rebuttal and therefore did not fall within Rule 404(b). The district court subsequently ruled the generalized notice previously given by the Government was sufficient to satisfy the Rule 404(b) notice requirement. At the close of the Government's rebuttal case, Carrasco moved to retake the stand to rebut Ceballos's testimony. The district court denied Carrasco's motion.

Appellant Ruiz also testified on his own behalf at trial. He told the jury that, on the day of his arrest, he had been with Sierra because Sierra was a Santeria priest. Ruiz testified he was trying to make himself a saint in the Santeria religion. Ruiz further testified that he had accompanied Sierra to the meeting with Nuñez

5

because Sierra had asked him to go with him to help someone in trouble, not because he intended to obtain drugs. Ruiz further testified that when he realized something suspicious was going on, he attempted physically to distance himself from Sierra and Nuñez.

In rebuttal, the Government presented testimony from Ceballos regarding a conversation he had with Appellant Ruiz in prison. Ceballos testified that Appellant Ruiz said he had gone with Sierra to pick up the cocaine and had ended up in a lot of trouble. Ceballos testified Appellant Ruiz said he was going to attribute any statements he might have made while he was with Sierra to the Santeria religion.

The jury convicted Appellant Carrasco on the only charge against him: attempt to possess with intent to distribute five kilograms or more of cocaine. The jury convicted Appellant Ruiz on both counts against him: conspiracy to possess with intent to distribute five kilograms or more of cocaine and attempt to possess with intent to distribute five kilograms or more of cocaine. Carrasco and Ruiz appeal their convictions and sentences.

## II.  DISCUSSION

A.     *Appellant Carrasco*

Appellant Carrasco contends the district court should have granted a mistrial when the Government presented testimony from Andres Ceballos implicating Carrasco in specific prior acts of drug dealing without providing notice as required under Federal Rule of Evidence 404(b).  Carrasco further contends the district court committed reversible error when it refused to permit him to take the stand in surrebuttal to address Ceballos's testimony.

We review the district court's decisions as to the admissibility of evidence for abuse of discretion.  *United States v. Perez-Tosta*, 36 F.3d 1552, 1560 (11th Cir. 1994) (citation omitted).

Federal Rule of Evidence 404(b) provides:

> **(b) Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The rule requires "the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal." Fed. R. Evid. 404(b) advisory committee's note to 1991 amendments. Thus, the Government was required to provide notice of the prior bad acts to which Ceballos testified in rebuttal.[2]

Moreover, although the Advisory Committee Notes discuss Rule 404(b) as containing a "generalized notice provision," the prosecution still must "apprise the defense of the general nature of the evidence of extrinsic acts." *Id.* The Government initially gave notice that it might use the fact of Appellant Carrasco's May 1994 arrest and subsequent conviction for drug and firearms offenses. The Government subsequently gave notice that it might introduce evidence of two additional prior bad acts: (1) an instance (at an unspecified time) when Rodriguez fronted marijuana for sale to Appellant Carrasco, who eventually paid between $3000 and $4000 to Rodriguez for the drugs; and (2) an instance (again at an unspecified time) when codefendant Rodriguez, Appellant Carrasco, and another

---

[2] Neither party referenced the standing discovery order in its brief, but in reviewing the record we noticed the standing discovery order signed by the magistrate judge regarding the case against Carrasco states the "Government shall advise the defendant(s) of its intention to introduce during its case in chief proof of evidence, pursuant to Rule 404(b), Federal Rules of Evidence." We respectfully suggest all such discovery orders be modified to reflect the requirements of Rule 404(b).

8

individual stole foreign currency from an office building in Miami and sold it for $3000 in United States currency.

In ruling admissible the evidence pertaining to Appellant Carrasco's past dealings with Rodriguez, including "evidence of past narcotics dealings where Rodriguez 'fronted' drugs to Carrasco for distribution," the district court held the evidence to be inextricably intertwined with the Government's proof of the charged offenses and therefore outside the realm of Rule 404(b). Arguably, Ceballos's testimony regarding transactions between Appellant Carrasco and Rodriguez might be encompassed by the district court's inextricably intertwined ruling. The Government does not, however, point to any notice it gave to Appellant Carrasco that it might introduce evidence of drug dealings between Ceballos and Carrasco, or of Carrasco's alleged operation of a tire business as a front for drug operations.[3] We therefore find the district court's admission of that evidence was in error under Rule 404(b). We next must consider whether that error was harmless. *See Perez-Tosta*, 36 F.3d at 1562 n.9 (11th Cir. 1994).

The policy behind the Rule 404(b) notice requirement is "to reduce surprise and promote early resolution on the issue of admissibility." Fed. R. Evid. 404(b)

---

[3] We also note there is no allegation that this evidence was newly discovered by the Government during the course of trial.

9

advisory committee's note to 1991 amendments.  Carrasco's defense at trial was that he had gone to meet Rodriguez because he was concerned about Rodriguez's recurrent drug problem.  Moreover, in testifying, Carrasco minimized his prior narcotics involvement.

The testimony regarding Carrasco's narcotics involvement, of which the Government failed to give the required Rule 404(b) notice, went to the heart of Carrasco's defense, his intent.  The Government's failure to provide the required Rule 404(b) notice therefore prejudiced Carrasco's ability to defend himself. The prejudice to Carrasco was compounded by the fact that the district court did not permit Carrasco to reopen his case to address Ceballos's testimony.  Moreover, by its own admission in a filing with the district court, the Government did "not have overwhelming evidence of Carrasco's intent to commit his charged offense."

We conclude the Government's failure to provide the required Rule 404(b) notice was not harmless and reverse Carrasco's conviction and remand to the district court for further proceedings.[4]

---

[4] Because we reverse Appellant Carrasco's conviction on this ground, we do not consider his other arguments on appeal.

B.      *Appellant Ruiz*

Appellant Ruiz contends the district court erred in refusing to give his

proposed attempt instruction.  At trial, Ruiz adopted Appellant Carrasco's

argument and requested the district court give the following instruction as to the

attempt charge against him:

> An attempt requires proof that the defendant was acting with the state of mind required for the commission of the offense and was engaged in conduct that constitutes a substantial step toward commission of the crime.  To prove an illegal attempt, the government must show that the defendant had a specific intent to engage in criminal conduct when he took a substantial step toward commission of the offense.
>
> To find that a substantial step was taken, you must determine that the defendant's objective acts mark the defendant's conduct as criminal so that the defendant's acts as a whole strongly corroborate the required culpability; they must not be equivocal.  A substantial step toward completion of a criminal offense, as required to show attempt, is something more than mere preparation, but less than the last act necessary before the actual commission of the substantive crime.  The act must be of such a nature that a reasonable observer viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the law.

(Footnotes omitted).  The district court refused to give the proposed instruction,

and gave the following instruction instead:

> For you to find the defendants guilty of attempting to possess cocaine with the intent to distribute, you must be convinced that the government has proved each of the following facts beyond a reasonable doubt.

11

First:  That the defendant intended to possess cocaine with the intent to distribute it and[,]

Second:  That the defendant did an act constituting a substantial step towards the commission of that crime which strongly corroborates the defendant's criminal intent.

The defendant's acts taken as a whole must strongly corroborate the required culpability, they must not be equivocal.

We review a district court's refusal to give a requested jury instruction for abuse of discretion.  *United States v. Futrell*, 209 F.3d 1286, 1288 (11th Cir. 2000) (citation omitted).  A district court's refusal to give a requested instruction is reversible error if "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." *United States v. Paradies*, 98 F.3d 1266, 1286 (11th Cir. 1996) (citation omitted).

The only substantive difference between the proposed instruction and the instruction the district court gave to the jury is that the proposed instruction included a definition of a substantial step as "something more than mere preparation, but less than the last act necessary before the actual commission of the substantive crime."  Given the nature of Appellant Ruiz's defense at trial, there

was no reversible error because the district court's refusal to give the requested instruction did not seriously impair Appellant Ruiz's ability to defend himself.

Appellant Ruiz went at the appointed time to the appointed meeting place for the drug transactions. There can be no doubt that, taken with the requisite intent, this conduct constituted more than the mere preparation to which the proposed jury instruction refers. Ruiz's defense at trial essentially was that he did not take that action with the requisite intent. For example, Ruiz testified he went with Sierra to meet Nuñez only because Sierra had asked him to accompany him to help someone, not because he intended to obtain drugs to sell. He further testified that when he realized something suspicious was going on, he attempted physically to distance himself from Sierra and Nuñez. Upon consideration of the nature of Ruiz's defense, we conclude the district court's refusal to give the requested attempt instruction was not reversible error.[5]

## III. CONCLUSION

We reverse Appellant Carrasco's conviction. The Government's failure to give Rule 404(b) notice of Carrasco's prior bad acts as to which it introduced evidence at trial was not harmless. We find no error, however, with respect to

---

[5] After carefully considering the other arguments raised by Appellant Ruiz on appeal, we conclude they are without merit and do not discuss them. *See* 11th Cir. R. 36-1.

Appellant Ruiz, and affirm his convictions and sentence except insofar as we remand to the district court to amend the judgment to reflect accurately Ruiz's offenses of conviction.

REVERSED IN PART, AFFIRMED IN PART, and REMANDED.