[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 6, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11882
Non-Argument Calendar
_____

D. C. Docket No. 05-00029-CR-1-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER G. ARCHIBALD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(December 6, 2006)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Peter G. Archibald ("Archibald") challenges his convictions for

knowingly and fraudulently concealing the assets of a bankruptcy estate, 18 U.S.C. § 152(1), and knowingly and fraudulently making a false oath in relation to a bankruptcy case, 18 U.S.C. § 152(2). Archibald raises a number of issues on appeal. First, he challenges the sufficiency of the criminal indictment pursuant to which he was charged. Archibald also argues that the district court erred in admitting certain evidence against him at trial and that the district court erred in calculating the amount of the monetary loss for purposes of the Sentencing Guidelines. Finally, he contends that the evidence presented at trial was insufficient to sustain his convictions. We AFFIRM.

## I. BACKGROUND

Archibald and his wife owned all of the stock in Rooster's Barnyard, Inc. ("Rooster's"), a closely held corporation operating as an adult entertainment club in Atlanta, Georgia. Although Rooster's was a viable business, Archibald and his wife had minimal involvement in the day-to-day management of the club. The couple resided in St. Simon's Island, Georgia and received regular income from the club's operations. In addition to his ownership interest in Rooster's, Archibald owned restaurants in St. Simon's and Jekyll Island, Georgia, and commercial property in Glynn County, Georgia.

Due to financial difficulties, in December 2003 Archibald and his wife

2

jointly filed a Voluntary Bankruptcy Petition with the United States Bankruptcy Court for the Southern District of Georgia. The Archibalds sought protection pursuant to Chapter 13 of the Bankruptcy Code ("the Code").[1] In connection with Schedule B of their petition, the Archibalds were required to itemize all of their assets, including the value of their interest in any shares of stock, and to provide the market value for each asset listed. The Archibalds listed Rooster's as an asset on the Schedule and indicated that the current market value of their interest in the company was $2,000.

Subsequent to the bankruptcy filing, Coastal Bank of Georgia ("Coastal Bank"), one of the Archibalds' secured creditors, filed with the bankruptcy court a motion to dismiss the bankruptcy petition. Coastal Bank argued that the total amount of the Archibalds' debt exceeded the amount set forth in section 109(e) of the Code, and that therefore the couple was ineligible for Chapter 13 protection. Coastal Bank also argued that the Archibalds knew that a Chapter 13 filing was inappropriate based on their circumstances, and that they had filed for bankruptcy

---

[1] Chapter 13 of the Code creates a reorganization mechanism for individual debtors, and permits them to repay their outstanding debts–either in full, or on a *pro rata* basis–over a period of time. Unlike Chapter 7, in which the debtor's property is subject to a complete liquidation, Chapter 13 permits a debtor to repay either some or all of his debts based on the monthly payment schedule approved by the bankruptcy court. To be eligible for Chapter 13 protection, however, the individual's debts listed on the bankruptcy petition must aggregate to less than a certain dollar amount. See 11 U.S.C. § 109(e). If the individual's debts exceed the dollar amount set forth in § 109(e), the individual will not be eligible for reorganization under Chapter 13 and must seek another form of bankruptcy protection.

with bad faith.  Accordingly, Coastal Bank asked that the petition be dismissed with prejudice.

The bankruptcy court held a hearing on the motion in January 2004 and Archibald testified in support of his petition.  During cross-examination, Archibald stated that he and his wife were the sole owners of 100% of the stock of Rooster's.  He then stated that the company was worth about four million dollars.  When Archibald was asked why he listed the market value of Rooster's as $2,000 on his bankruptcy petition–when the company had zero debt and a value of around $4 million–Archibald first testified that $2,000 was the amount that he originally invested in the business.  When further queried by the court, Archibald stated that he had listed the value at $2,000 because that was the value of "the last license" that the club obtained in Dekalb County.  Exh. 11 at 23.  After again confirming on cross-examination that the actual value of Rooster's was closer to $4 million, the court dismissed the Archibalds' Chapter 13 petition.  Finding that the Archibalds had abused the bankruptcy process, the court dismissed the petition with prejudice.

After the hearing, the bankruptcy trustee referred the Archibalds' case to the Federal Bureau of Investigation (FBI), which began investigating the discrepancy between the $2,000 valuation of Rooster's on the Archibalds' Chapter 13 filing and Archibald's subsequent testimony at the bankruptcy hearing.  Pursuant to that

investigation, FBI agent Mark Alig interviewed Archibald and his wife. When Agent Alig asked Archibald about the $2,000 valuation listed on the bankruptcy petition, Archibald first claimed that he was instructed by a friend in Atlanta to place that valuation on the business. Later in the interview Archibald stated that he did not know why the $2,000 figure appeared in his bankruptcy filing, but that his bankruptcy counsel had instructed him to attach that value to the club. Finally, Archibald indicated that he valued Rooster's at $2,000 because that was the amount that he had initially invested in the company. Despite these differing stories concerning the $2,000 valuation, Archibald reiterated to the federal agent his belief that the actual "market value of the property was four million dollars." R5 at 61.

On 14 July 2005 a federal grand jury issued a two-count indictment against Archibald and his wife, charging them with knowingly and fraudulently concealing property belonging to the bankruptcy estate, 18 U.S.C. § 152(1), and knowingly and fraudulently making a false oath in connection with a bankruptcy case, 18 U.S.C. § 152(2)–namely, the failure to disclose the true value of Rooster's. A trial by jury was held in November 2005. Because the evidence presented at trial showed that Archibald's wife had no involvement in either the preparation of the Chapter 13 bankruptcy nor in the putative valuation of Rooster's, Archibald's wife

5

moved for a judgment of acquittal prior to jury deliberations, and her motion was granted. The jury found Archibald guilty of both counts set forth in the indictment.

The probation officer prepared a pre-sentence investigation report (PSI), recommending a base offense level of 6 because Archibald's crime involved "fraud and deceit." See U.S.S.G. § 2B1.1. The PSI also stated that the loss intended by Archibald's offense had been $4,000,000, the value of the concealed asset. Accordingly, the probation officer recommended an 18-level enhancement based on the loss amount being greater than $2,500,000. See U.S.S.G. § 2B1.1(b)(1)(J). The probation officer further recommended a two-level enhancement because the offense involved fraudulent action during a bankruptcy proceeding, see U.S.S.G. § 2B1.1(b)(8)(B), and a two-level enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, resulting in a total offense level of 28.

At the sentencing hearing, the government modified its position concerning the total amount of loss intended by Archibald's conduct. Specifically, the government lowered its estimate of the total monetary loss, agreeing that the intended loss amount should be capped at the total debt that Archibald claimed on his bankruptcy petition– in this case, between "1.6 and 1.9 million dollars." R7 at 56. Accordingly, the government recommended that Archibald's sentence be enhanced by only 16 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(I), rather than the

18-level enhancement originally indicated in the PSI based on U.S.S.G. § 2B1.1(b)(1)(J).

The district court agreed with the government's revised sentencing calculation. In light of a base level of 6, a 16-level enhancement based upon an intended loss of more that $1,000,000, and the additional enhancements recommended in the PSI, the court concluded that Archibald's total offense level was 26. Archibald's new offense level, with a criminal history category of I, resulted in a guidelines range of 63-78 months of imprisonment. The district court sentenced Archibald to 60 months of imprisonment for Count One of the indictment, and 18 months for Count Two, to be served concurrently, resulting in a total prison sentence of 60 months. This appeal followed.

## II. DISCUSSION

A. Sufficiency of the Indictment

Archibald's first contention on appeal concerns the legal sufficiency of the criminal indictment pursuant to which he was charged. Archibald argues that the language of the indictment, on its face, fails to allege a criminal offense. Archibald's counsel first raised this issue in a motion to dismiss pursuant to Fed. R. Crim. P. 12(b)(3), but the district court denied that motion. Archibald's counsel again challenged the indictment at the conclusion of the direct examination of the

prosecution's first witness, this time via an oral motion for a judgment of acquittal, which the district court also denied. Archibald now appeals the district court's denial of those motions, and argues that the indictment is legally insufficient. The question of "whether an indictment sufficiently alleges a statutorily proscribed offense is a question of law." Rodriguez v. Ritchey, 556 F.2d 1185, 1191 n. 22 (5th Cir. 1977), cert. denied, 434 U.S. 1047, 98 S. Ct. 894 (1978). We review questions of law *de novo.* United States v. Shenberg, 89 F.3d 1461, 1478 (11th Cir. 1996) (citations omitted).

The purpose of a criminal indictment is two-fold. First, the indictment "puts the defendant on notice of the nature and cause of the accusation as required by the Sixth Amendment of the Constitution." United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998) (citation and internal quotations omitted). "Second, it fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime." Id. (citation and internal quotations omitted). "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United

States v. Steele, 147 F.3d 1316, 1320 (11th Cir. 1998) (en banc) (citation and internal quotations omitted). We have also stated that "practical, rather than technical, considerations govern the validity of an indictment." United States v. Hooshmand, 931 F.2d 725, 735 (11th Cir. 1991) (citation omitted). That is, "[m]inor deficiencies that do not prejudice the defendant will not prompt this Court to reverse a conviction." United States v. Chilcote, 724 F.2d 1498, 1505 (11th Cir. 1984) (citations omitted).

The indictment issued in Archibald's case contains two counts. Count One alleges that Archibald and his wife

> in connection with the aforementioned Bankruptcy Petition, did knowingly and fraudulently conceal from creditors or the United States Trustee, property belonging to the estate of the [Defendants] . . . that being the assets of Rooster[']s Barnyard, Inc. . . . in violation of [18 U.S.C. § 152(1)].

R1-1 at 1. Count Two similarly alleges that Archibald and his wife

> in connection with the aforementioned Bankruptcy Petition under Title 11, did knowingly and fraudulently make a false oath or account by substantially undervaluing the assets of Rooster[']s Barnyard, Inc. . . . in violation of [18 U.S.C. § 152(2)].

Id. at 2. Archibald's counsel correctly notes that in order for Archibald to have violated 18 U.S.C. § 152, he would have had to have knowingly concealed "property belonging to the [bankruptcy estate]" from either his creditors or the

9

trustee in bankruptcy.  See 18 U.S.C. § 152(1).  "Property" is defined in the Code as including "all legal or equitable interests of the debtor."  11 U.S.C. § 541(a)(1).

Archibald's appeal hinges on the latter language of Counts One and Two–specifically the allegation that Archibald's bankruptcy petition concealed "the assets of Rooster[']s Barnyard, Inc."  R1-1 at 1, 2 (emphasis added).  As Archibald's counsel points out, a shareholder in a corporation would be required to disclose his interest in a corporation (represented by the shares that he owned) in a bankruptcy petition, but he would not be required to disclose "the assets" of that corporation, such as, in the case of Rooster's, the tables, chairs, and musical equipment owned by the club.  Id.  In other words, Archibald contends that while he was required to disclose the value of his ownership interest in Rooster's, he was not required to disclose the "assets of that corporation."  R4 at 7-8. Accordingly, Archibald asserts that the indictment fails to allege a criminal offense, since he could admit to concealing the "assets" of Rooster's on his bankruptcy petition and still not be guilty of a crime.  In support of this argument, Archibald relies on the definition of "property" set forth in the Code, as well as the Seventh Circuit's opinion in Fowler v. Shadel, where the court made clear that a debtor's stock in a corporation is viewed as "property" for purposes of the bankruptcy estate, but that the separate assets of the corporation are not.  400 F.3d 1016, 1019 (7th Cir. 2005).

10

Archibald's argument is creative, but unpersuasive nevertheless.  The indictment alleges both the elements of the applicable offenses and the crimes with which Archibald was being charged.  See Steele, 147 F.3d at 1320 (reiterating the requirements for an indictment to be legally sufficient).  In fact, the indictment clearly states that Archibald did "knowingly and fraudulently conceal from creditors . . . property belonging to the estate" in violation of 18 U.S.C. § 152(1), and that he did "knowingly and fraudulently make a false oath or account" in connection with his bankruptcy, in violation of 18 U.S.C. § 152(2).  R1-1 at 1, 2.  While the indictment goes on to state, perhaps inartfully, that the property concealed from the bankruptcy petition consisted of the "assets" of Rooster's, and while it would have been preferable to identify the concealed property as Archibald's interest in Rooster's rather than as Rooster's assets, we cannot conclude that the indictment failed to give Archibald adequate notice of the charges that were pending against him.

Notably, Archibald does not contend that the indictment failed to notify him of the charges against him; nor could he so claim, as the indictment specifically and expressly refers to the statutory provisions on which the charges were based.  See Fern, 155 F.3d at 1325.  Rather, Archibald's argument is essentially that the indictment is inaccurate because Archibald did not own the "property" that was

11

allegedly obscured; his closely-held corporation did. But an indictment simply must allege "enough factual detail to apprise [the defendant] of the conduct for which he would be . . . tried." United States v. Gray, 260 F.3d 1267, 1283 (11th Cir. 2001). The indictment in this case satisfies that threshold; it not only specifically references Archibald's 30 December 2003 bankruptcy filing, but it also clearly sets forth the allegations that the Archibalds concealed "property belonging to the [bankruptcy] estate" from that petition and that they "ma[de] a false oath" in connection with that petition. R1-1 at 1, 2. The subsequent reference in the indictment, to the "assets" of the corporation, while somewhat careless, is not enough to invalidate the indictment, where the rest of the document is quite specific and expressly sets out the charges alleged against Archibald. See Fern, 155 F.3d 1326 n. 12 (pointing out "the tension between [the defendant]'s suggestion that the absence of some explicit language in the indictment is fatal, while the presence of other explicit language is of no moment"). As the district court noted, the indictment might have lacked the precise "terminology" later argued for by Archibald, but, nevertheless, "the essence of it [was] there." Id. This conclusion was proper, especially given our repeated admonition that "practical, rather than technical, considerations govern the validity of an

12

indictment." Hooshmand, 931 F.2d at 735 (citation omitted).[2]  Archibald's motion

to dismiss pursuant to Fed. R. Crim. P. 12(b)(3) was properly denied.

B.  Prior Act Evidence Admitted Under Federal Rule of Evidence 404(b)

Archibald argues that the court erred in permitting the government to admit

into evidence the facts surrounding one of Archibald's earlier bankruptcy filings.

At trial, the bulk of Archibald's defense was that he was unfamiliar with

bankruptcy law in general and the process of filing out a bankruptcy petition in

particular, and, as a result, his erroneous valuation of Rooster's on his 2003

petition was a simple mistake.  During the prosecution's cross-examination of

Archibald, the government sought to challenge Archibald's claims of naivete´ by

introducing the facts surrounding his earlier 1991 bankruptcy filing, in which it

had been alleged by a creditor that Archibald intentionally had failed to list the

value of Rooster's.  At trial the court overruled Archibald's objection to the

admission of this evidence.  Archibald now argues that the admission of this

evidence violated Rule 404(b) of the Federal Rules of Evidence, which permits the

---

[2] As a final matter, we note that Archibald's counsel could have moved for a bill of particulars to clarify the allegations set forth in the indictment, if he believed such a clarification was necessary to prepare his defense.  See, e.g., United States v. Sharpe, 438 F.3d 1257, 1263 n. 3 (11th Cir. 2006) ("To the extent the defendants suggest that more detail was required in the indictment, we disagree.  It is not necessary for an indictment . . . to allege in detail the factual proof that will be relied upon to support the charges.  That information, if essential to the defense, can be obtained by a motion for a bill of particulars . . .") (citation and internal quotations omitted).  No such clarification was ever sought; rather, Archibald's counsel aimed simply to dismiss the indictment based on a minor semantic shortcoming.

13

admission of prior bad acts only under certain narrow circumstances.

We review a district court's admission of prior bad acts under Rule 404(b) of the Federal Rules of Evidence for abuse of discretion. United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) (per curiam) (citation omitted). Rule 404(b) of the Federal Rules of Evidence provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

Fed R. Ev. 404(b). We have indicated that, in order for such prior act evidence to be properly admitted under Rule 404(b), three steps are needed. "First, the evidence must be relevant to an issue other than the defendant's character. Second, there must be sufficient proof that the defendant committed the extrinsic act. Third, the evidence must survive the balancing test of prescribed by Federal Rule of Evidence 403." United States v. Mills, 138 F.3d 928, 935 (11th Cir. 1998). That is, the district court must find that the probative value of the evidence is not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. See Fed. R. Ev. 403.

In this case, the government sought to introduce evidence of Archibald's 1991 bankruptcy filing to refute Archibald's assertion that he was unfamiliar with

14

bankruptcy law and the proper preparation of a bankruptcy petition. The evidence introduced at trial not only showed that Archibald had filed for bankruptcy previously, but it also revealed that the 1991 petition was converted from a Chapter 13 filing to a Chapter 7 filing, due to Archibald's apparent failure to disclose the value of Rooster's on his 1991 petition. Such evidence, although a prior bad act, was admissible under Rule 404(b) to show Archibald's "intent" to conceal his interest in Rooster's on his 2003 petition. The evidence surrounding the 1991 petition was not introduced to show Archibald's character or action in conformity therewith, but, rather, to show that Archibald was capable of formulating the intent to knowingly and purposefully conceal assets in pursuing bankruptcy protection–and to refute Archibald's claims to the contrary.

Archibald further objects to the lack of notice afforded to him prior to the introduction of the prior act evidence.[3] Rule 404(b) imposes a notice requirement on the admission of prior act evidence in the context of a criminal trial; the rule states that, before admitting such evidence, the prosecution is required to "provide reasonable notice in advance of trial, or during trial if the court excuses pretrial

---

[3] We reject the government's contention that Archibald's counsel failed to adequately preserve this objection at trial. On the contrary, the record makes clear that Archibald's counsel's objection was based on the lack of advanced notice that is required under Fed R. Ev. 404(b). Archibald's attorney repeatedly stated at trial that he had never seen the evidence concerning the earlier 1991 petition before. R5 at 199, 205. His protestations before the court sufficiently preserved a Rule 404(b) objection for purposes of this appeal.

notice on good cause shown." Fed. R. Ev. 404(b). Archibald argues on appeal that the government's failure to provide advanced notice before admitting the 1991 petition had a prejudicial effect on his case, and that the court therefore should have excluded it. In previous cases we have held that the admission of prior act evidence in a criminal trial, without any advanced notice on the part of the prosecution, can be so prejudicial to a defendant's case that it warrants a reversal of his conviction. See, e.g., United States v. Carrasco, 381 F.3d 1237, 1241 (11th Cir. 2004) (per curiam) (finding that the failure to give "the required Rule 404(b) notice" to a defendant before admitting evidence of his prior drug dealings "prejudiced [the defendant]'s ability to defend himself" and thus warranted a reversal of his conviction).

Rule 404(b), however, expressly permits the admission of prior act evidence, without advanced notice, "if the court excuses pretrial notice on good cause shown." See Fed. R. Ev. 404(b). Although we have not fully defined the contours of the good cause exception to Rule 404(b)'s notice requirement, our sister circuits have held that the good cause threshold is satisfied under the Federal Rules of Evidence when the evidence is not discovered by the prosecution until immediately before or during the trial. See, e.g., United States v. Lopez-Gutierrez, 83 F.3d 1235, 1241 (10th Cir. 1996) (stating that "because the evidence was not made

16

available to the government until the night before trial . . . there was good cause to excuse the pretrial notice requirement"). See also United States v. Scholl, 166 F.3d 964, 976 (9th Cir. 1999) (stating that where the government mistakenly believed that an incident occurred in 1990, but discovered during trial that the incident occurred in 1986, prior to the defendant's criminal acts, the good cause threshold was met, despite the absence of any notice to the defendant).

In this case, the prosecution stated that it had not received the evidence concerning Archibald's 1991 bankruptcy until the night before Archibald was scheduled to testify. Such circumstances constitute "good cause" to excuse Rule 404(b)'s pretrial notice requirement. Accordingly, the district court did not err in admitting the evidence concerning the 1991 bankruptcy petition under Rule 404(b).[4]

C. Amount of Loss for Sentencing Purposes

Archibald argues that the district court erred in calculating the amount of intended loss for purposes of calculating his sentence under U.S.S.G. § 2B1.1.

---

[4] Even if we were to find that the evidence concerning the 1991 bankruptcy petition should not have been admitted without advanced notice to Archibald, we would nevertheless conclude that the admission of the evidence constituted harmless error, especially because the direct evidence presented against Archibald was overwhelming, even without evidence of the 1991 petition. See Chilcote, 724 F.2d at 1502 ("Although we found error in the admission of the evidence under [Rule 404(b)], we conclude that it is harmless because other substantial evidence supports [the] conviction. . . . Direct evidence . . . is sufficient to sustain the conviction without consideration of the extrinsic act evidence.").

17

Archibald contends that there is no evidence, either direct or circumstantial, to show that he intended to cause a loss to his creditors by concealing the true value of Rooster's on his bankruptcy petition. In addition, he argues that he intended to pay his creditors in full, regardless of what value he ultimately placed on Rooster's, and that, therefore, it was impossible for his actions to have inflicted a loss upon his creditors. Thus he claims that no intended loss can be shown for purposes of the Sentencing Guidelines.

"We review the district court's determination of the amount of loss [under the Sentencing Guidelines] for clear error." United States v. Hernandez, 160 F.3d 661, 666-67 (11th Cir. 1998). Under U.S.S.G. § 2B1.1(b)(1), the defendant's offense level is subject to enhancement if the loss exceeded $5,000. The extent of the enhancement is determined by the total amount of the loss. U.S.S.G. § 2B1.1(b)(1). While gauging the amount of monetary loss sometimes can be easy–such as in simple theft cases–determining the loss in bankruptcy fraud proceedings can be difficult. For purposes of the Sentencing Guidelines, the term "loss" refers to either (1) the actual loss or (2) the intended loss, whichever number is greater. See U.S.S.G. § 2B1.1(b)(1) cmt. 3(A). Here, it is undisputed that there was no "actual loss" upon Archibald's creditors; the discharge that Archibald sought in Chapter 13 proceedings was never granted, and the bankruptcy court

18

dismissed his petition at the outset. The issue, therefore, is the proper calculation of the intended loss. The intended loss is defined in the Sentencing Guidelines as the "pecuniary harm that was intended to result from the offense," including the "intended harm that would have been impossible or unlikely to occur." Id. cmt. 3(A)(ii). The amount of intended loss need not be exact, so long as it is a "reasonable estimate . . . given the available information." United States v. Dolan, 120 F.3d 856, 870 (8th Cir. 1997) (citations omitted).

Although we have not so explicitly held, other federal courts in calculating the loss in the context of bankruptcy fraud have concluded that the intended loss is determined by using "either the value of the assets concealed or the value of the debtor's liabilities, whichever is less." Id. (emphasis added). See also United States v. Edgar, 971 F.2d 89, 95-96 (8th Cir. 1992) (stating that when the value of the asset concealed exceeds the total amount of the debt, the intended loss should be limited to the total amount of the debt); cf. United States v. Mutuc, 349 F.3d 930, 936 (7th Cir. 2003) (citation omitted) (stating that under § 2B1.1 "the proper [intended] loss calculation in bankruptcy fraud cases is the amount of the debt that the defendant sought to discharge in bankruptcy"). In this case, the district court followed the approach of the Eighth Circuit in Dolan and concluded that the loss intended by Archibald should be capped at the total amount of the debt that

Archibald sought to discharge in bankruptcy (between $1.6 and $1.9 million), since that amount was less than the asset concealed (the $4 million nightclub). The government agreed to this loss calculation for purposes of Archibald's sentencing, and in so doing the government reduced the severity of the sentencing recommendation that had been set forth in Archibald's PSI. Accordingly, the district court imposed a 16-level enhancement based on an intended loss of more than $1,000,000, pursuant to U.S.S.G. 2B1.1(b)(1)(I). We cannot conclude that this calculation constituted clear error.

On appeal, Archibald argues that he had no intent to inflict any loss on his creditors, and that, in fact, he intended to pay all of his creditors in full. When confronted with the damaging fact that Archibald's Chapter 13 petition was a *pro rata* plan–such that his creditors' outstanding debts might <u>not</u> have been repaid in full–Archibald falls back on the argument that he did not truly understand the significance of the petition that he was filing. Consequently, he argues that there is no evidence that he "subjectively intended to inflict any loss upon his creditors." Br. of Appellant at 23.

Despite these arguments, the evidence presented at trial makes clear that Archibald's conduct could have resulted in a loss to his creditors; the fact that no such loss actually ensued is immaterial. <u>See</u> <u>Hernandez</u>, 160 F.3d at 667. As the

trustee in bankruptcy testified during trial, "[i]f an asset isn't included in the Bankruptcy Petition, that then means that the asset isn't counted in figuring out how much creditors can be repaid, which means that creditors are repaid less than they should be repaid." R4 at 54. This evidence was sufficient to undermine Archibald's argument that he intended to repay his creditors in full. Furthermore, we reject Archibald's claim that he did not understand the significance of his actions in filing a *pro rata* Chapter 13 petition, and that therefore he did not subjectively intend a loss upon anyone. A sentencing judge "is not bound to accept [a defendant]'s self-serving assertions at sentencing that he intended no loss to his creditors." Dolan, 120 F.3d at 871 (citation omitted).

Moreover, courts have made clear that, for purposes of determining intended loss under U.S.S.G. § 2B1.1, a defendant's intent can be inferred from his conduct in concealing or undervaluing large assets from a bankruptcy estate. See, e.g., Feldman v. United States, 338 F.3d 212, 223 (3d Cir. 2003); United States v. Holthaus, 437 F. Supp. 2d 932, 937 (N.D. Iowa 2006). In Feldman, a defendant was accused of understating his income in a bankruptcy petition and was charged with violating 18 U.S.C. § 152. 338 F.3d at 221. The defendant argued on appeal that he did not subjectively intend to inflict a loss, since "he thought the creditors would be unaffected by the concealment" and he believed that the excluded assets

21

were exempt from the bankruptcy petition. Id. The court rejected the claim that the defendant lacked intent, concluding, on the contrary, that the defendant's intent to inflict a loss could be inferred from the simple fact that he concealed a large amount of property from his bankruptcy petition. Id. at 223. See also Holthaus, 932 F. Supp. 2d at 937 (stating that the fact that a defendant concealed assets was evidence that he intended to defraud his creditors).

Similarly, in Archibald's case a jury could clearly infer from his conduct–in vastly understating the value of Rooster's on his bankruptcy petition and then being unable to explain the discrepancy–that he subjectively "intended that the estate be decreased by the amount that he was failing to disclose." See Feldman, 338 F.3d at 223. The district court did not act improperly in inferring that Archibald had intended to cause a loss to his creditors. Nor did it err in finding that Archibald's intended loss equaled the total amount of the debt he sought to discharge in bankruptcy–a sum in excess of $1,000,000–thereby warranting a 16-level enhancement to his base offense level. In summary, we discern no clear error in the district court's calculation of the monetary loss for sentencing purposes.

D. Sufficiency of the Evidence

Finally, Archibald argues that the district court erred in denying his motion for judgment for acquittal, since the evidence presented at trial was insufficient to

prove his guilt on either count of the indictment beyond a reasonable doubt. Specifically, Archibald argues that there was insufficient evidence to show his intent to either conceal assets or to make a false oath in connection with his bankruptcy. We review the denial of a defendant's motion for acquittal *de novo*. United States v. Perez-Tosta, 36 F.3d 1552, 1556 (11th Cir. 1994) (citations omitted). "In considering the sufficiency of the evidence we draw all reasonable inferences in the [g]overnment's favor." Id. (citations omitted). We "cannot reverse a conviction for insufficiency of the evidence unless after reviewing the evidence in the light most favorable to the government, we conclude that no reasonable jury could find proof beyond a reasonable doubt." United States v. Jones, 913 F.2d 1552, 1557 (11th Cir. 1990) (citation omitted). Put another way, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Harris, 20 F.3d 445, 452 (11th Cir. 1994) (citations omitted).

In order to convict Archibald of Counts One and Two of the indictment, the jury was obligated to find, beyond a reasonable doubt, that he did "knowingly and fraudulently conceal . . . property belonging to the [bankruptcy] estate" and that he

did "knowingly and fraudulently make a false oath or account" in connection with his bankruptcy. 18 U.S.C. § 152(1) and (2). We find that the evidence presented is such that a reasonable jury could conclude that each of these charges was proven beyond a reasonable doubt. The government presented ample evidence concerning Archibald's undervaluation of his interest in Rooster's on his bankruptcy petition, as well as his unconvincing attempt to explain the discrepancy between the stated valuation and the actual valuation.

First, the government presented evidence at trial that Archibald knew that Rooster's Barnyard was worth well more than $2,000, by presenting various loan applications Archibald completed, prior to his bankruptcy filing, in which he repeatedly indicated that the total value of the club was between $3 and $5 million. Second, the government presented damaging evidence concerning Archibald's contradictory justifications, after the fact, as to why he valued the company at $2,000 on his bankruptcy petition. His explanations were woefully inconsistent on that point; at various times the jury heard evidence that $2,000 was the amount that Archibald originally invested in the business; that $2,000 was the value of the license the club had paid to operate in Dekalb County; that Archibald's friend advised him to put $2,000 on his petition; that his bankruptcy counsel instructed him to place that valuation on the company; that his bankruptcy counsel failed to

give him any advice about how to value the company; and that his bankruptcy counsel's paralegal told him to place that number on the petition.

If viewed in a vacuum, each of these scenarios might plausibly be defended against with an innocent explanation. See Harris, 20 F.3d at 453. Taken has a whole, however, they provide sufficient evidence for a reasonable juror to conclude that the prosecution proved beyond a reasonable doubt that Archibald had the requisite intent under 18 U.S.C. § 152. See id. This is especially so since the "[s]ubsequent conduct [of a defendant] may be considered if it supports a reasonable inference as to [the defendant's] prior intent." See United States v. McCarrick, 294 F.3d 1286, 1291 (11th Cir. 2002). While Archibald presented some evidence to support his defense of innocent mistake rather than intentional misrepresentation, we cannot find that "no reasonable jury could find proof beyond a reasonable doubt." See Jones, 913 F.2d at 1557. The jury in Archibald's case was "free to choose among the constructions of the evidence," see Harris, 20 F.3d at 452 (citations omitted), and it concluded that the evidence supported a finding of guilt beyond a reasonable doubt. His motion for judgment of acquittal was properly denied.

## III. CONCLUSION

Archibald has appealed his convictions for knowingly and fraudulently

concealing an asset of the bankruptcy estate from creditors or the trustee in bankruptcy, 18 U.S.C. § 152(1), and knowingly and fraudulently making a false oath in connection with his bankruptcy proceeding, 18 U.S.C. § 152(2). He has argued that the indictment under which he was charged was insufficient; that evidence was improperly admitted against him at trial; that the district court erred in calculating his sentence; and that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt. Having carefully reviewed the record and the briefs of the parties, we discern no error in connection with Archibald's indictment, his trial, or his subsequent sentence. Accordingly, Archibald's convictions are **AFFIRMED.**