[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17209

_____

D.C. Docket No. 1:16-cr-20200-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAMADOU ASSANE BADIANE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 22, 2018)

Before MARCUS, FAY, and HULL, Circuit Judges.

PER CURIAM:

Mamadou Assane Badiane, a federal prisoner, appeals his conviction for

aggravated identity theft, 18 U.S.C. § 1028A, and his sentences for making a false

statement in a U.S. passport application, 18 U.S.C. § 1542, and aggravated identity theft.[1]  This is a strange case.  The government failed to conduct basic pretrial preparation, relying instead on Badiane pleading guilty.  On the other hand, one could reasonably think Badiane was trying to game the system by telling those involved that he was going to plead guilty, firing his attorney, and filing a pro se motion to dismiss the indictment on speedy trial grounds.  Our duty is to decide the issues raised in this appeal based upon the record, the facts, and the law.  This we shall do.

On appeal, Badiane argues that the district court abused its discretion by denying his motions for a continuance and a new trial, and by admitting evidence of his prior bad acts under Federal Rule of Evidence 404(b).  He also asserts that the government failed to introduce sufficient evidence to show that he knew the means of identification he used belonged to a real person.  Finally, he argues that the district court erred in imposing two sentencing enhancements.[2]  Contrary to Badiane's arguments, the district court did not abuse its discretion by denying the motion for a continuance or the motion for a new trial based on the belated disclosure of evidence, nor did it abuse its discretion in admitting evidence of his

---

[1] Badiane does not appeal his conviction for making a false statement in a U.S. passport application.

[2] Although Badiane also asserts that his sentence was substantively unreasonable, he does not present any arguments to this effect.  His passing reference is insufficient to raise the issue for appellate review.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

2

prior passport applications.  It also did not err in denying his motion for judgment of acquittal, as the government presented ample evidence of guilt.  Furthermore, the district court properly imposed the sentencing enhancements.  Accordingly, we affirm.

## I. BACKGROUND

In 2016, a grand jury returned an indictment charging Badiane with making a false statement in a U.S. passport application (Count 1) and aggravated identity theft (Count 2).  On April 21, 2016, the government filed its first discovery response, which stated that "all evidence made available . . . for inspection . . . may be offered in the trial of this cause, under F.R.E. 404(b) or otherwise."  The district court continued the case twice at the request of Badiane's counsel and rescheduled the trial to begin on August 17, 2016.[3]

Shortly after the second continuance was granted, Badiane filed a pro se motion to remove his counsel, stating that he had given counsel an "unequivocal order" that "under no circumstances could he request a continuance of the trial or agree to a continuance at the request of the Government."  Badiane requested that counsel be removed for violating his explicit instructions.  The district court granted Badiane's motion.  One week later, Badiane filed a pro se motion to

---

[3] The trial was originally scheduled for May 16, 2016.  Badiane's counsel filed a motion to continue the trial on April 27, and the district court rescheduled the trial to begin on June 27.  On May 31, Badiane's counsel filed a second motion for a continuance, which the district court initially denied; but later the district court sua sponte continued the trial until August 17.

dismiss the indictment for a violation of his rights under the Speedy Trial Act. On July 22, the district court appointed counsel to represent Badiane and declined to rule on his pro se motions.

The government and Badiane filed a joint motion for a continuance on August 8. Citing Badiane's complaints about the prior continuances, the district court denied the motion and scheduled a plea hearing for August 15. A plea agreement was not reached, and the case was set for a jury trial to begin on August 17. On the evening of August 16, the government produced for the first time Badiane's 200-page alien file, a screenshot of a receipt from a passport courier service, and the government's exhibit list. According to Badiane, the exhibit list stated for the first time that the government intended to introduce as evidence several other passport applications he had previously submitted.

The following morning, Badiane filed a motion for a continuance and a motion to exclude the above-referenced evidence. The government opposed the motion for a continuance, explaining that it had received Badiane's alien file and become aware of the courier service screenshot late the previous afternoon.[4] The district court denied Badiane's motions.

At trial, the government introduced two passport applications that had been submitted on October 13, 2015, and December 19, 2013, using the identifying

---

[4] At oral argument, counsel conceded that the prosecution had failed to request the alien file until August 15. It was delivered within 24 hours.

information and birth certificate of the victim in this case, Nesley Metayer.  The government also presented an application for a Georgia identification card that had been submitted using a bank statement and Metayer's identifying information, birth certificate, and social security card, as well as a copy of the temporary identification card issued on December 3, 2013.  Finally, the government introduced into evidence the following exhibits, produced to the defense the night before trial: (1) a courier service receipt for the submission of the October 13, 2015, passport application (exhibit 8); (2) Badiane's order of removal, dated June 11, 2001 (exhibit 4); (3) a withdrawal of Badiane's application for admission to the United States, dated March 29, 2006 (exhibit 5); (4) a second withdrawal of an application for admission to the United States, dated April 29, 2009 (exhibit 6A); (5) a notice to detain, remove, or present alien, dated April 29, 2009 (exhibit 6B); and (6) Badiane's French passport (exhibit 6C).  After the government rested, Badiane moved for a judgment of acquittal, which the district court denied.

During the defense's case-in-chief, Badiane admitted making a false statement on a passport application, but denied guilt as to Count 2, stating that he did not know Metayer was a real person.  Badiane testified that Metayer, who he knew as "Enrico," sold him a birth certificate and social security card for $8,000.  Metayer told Badiane that he had "made [the birth certificate] up with a friend" and that the documents "belong[ed] to nobody."  Badiane further testified that he

5

has an identical twin brother, but conceded that he, not his twin brother, submitted the 2015 and 2013 passport applications under Metayer's name. Badiane also admitted that he had applied for and received a Georgia identification card under Metayer's name, using Metayer's social security card. He denied submitting any passport applications other than those filed in 2015 and 2013.

On rebuttal, Aura Arauz-Figueroa, a fraud program manager for the U.S. State Department Miami Passport Agency, testified that, during her investigation into the 2015 passport application, she utilized facial recognition software, which revealed other fraudulent passport applications. The court admitted four passport applications made under four different names between 2005 and 2009. Arauz-Figueroa testified that the applications matched the facial recognition software. On cross-examination, she admitted that if someone has an identical twin sibling, the facial recognition software could return a false match for the individual; however, she recalled that Badiane's twin was not identical.

The jury found Badiane guilty as to both counts. Badiane subsequently filed a motion for a new trial and a renewed motion for judgment of acquittal. The district court denied the motions.

At sentencing, the district court imposed two Sentencing Guidelines enhancements with respect to Count 1—one for previously having been deported, U.S.S.G. § 2L2.2(b)(1), and one for obstruction of justice, U.S.S.G. § 3C1.1—

6

yielding a total offense level of 12 and an advisory Guidelines range of 10 to 16 months' imprisonment.[5]  The court imposed consecutive sentences of 24 months' imprisonment on each count, resulting in a total 48-month sentence.

## II. DISCUSSION

*A. Denial of the Motion for a Continuance and Motion for a New Trial*

We review the denial of a motion for a continuance and motion for a new trial for abuse of discretion.  *United States v. Valladares*, 544 F.3d 1257, 1261 (11th Cir. 2008); *United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005).  A "[d]enial of a continuance, requested by a defendant in order to permit additional preparation for trial, must be upheld unless the defendant can show an abuse of discretion and specific, substantial prejudice."  *United States v. Saget*, 991 F.2d 702, 708 (11th Cir. 1993).

Here, there is little question that best practices would have been for the government to obtain and disclose the alien file earlier.  In this regard, the government failed to approach this case in the manner it should approach a criminal trial.  We also note that it would have been more equitable for the district court to grant the joint motion for a continuance.

Nevertheless, we cannot conclude that the district court abused its discretion in denying Badiane a continuance.  Notably, Badiane directed his original counsel

---

[5] The Guidelines sentence for aggravated identity theft is the mandatory consecutive 24-month sentence required by statute.  18 U.S.C. § 1028A(a)(1); U.S.S.G. § 2B1.6(a).

7

not to move for a continuance and fired counsel for disobeying his explicit instruction.  He then filed a pro se motion to dismiss the indictment based on a violation of his rights under the Speedy Trial Act.  Changing course, Badiane now argues that it was an abuse of discretion to deny a continuance because defense counsel was unable to investigate his alien file, incorporate this evidence into the defense, or locate and subpoena potential witnesses.  While this change in position may be understandable in light of the belated disclosure of the alien file, Badiane was put on notice of the substance of the evidence in the alien file approximately four months prior to trial.

The government's discovery, disclosed on or around April 21, 2016, included four Diplomatic Security Service Reports of Investigation, which collectively provided the information contained in exhibits 4 through 6C.  As to exhibit 4—the June 11, 2001, order of removal—two Reports of Investigation indicated that Badiane had overstayed his visa and was removed from the country in June 2001.  The Reports of Investigation also stated that Badiane had attempted to enter the United States in 2006, that a database showed "an Enforce encounter by [Badiane] and Customs and Border Protection . . . on 29 Mar 2006," that the U.S. Consulate in Montreal had confirmed Badiane's March 29, 2006, arrest and subsequent deportation, and that Badiane's criminal record contained the following note: "03/29/06 intercepted in U.S. using someone else's PPT."  Although the

8

Reports of Investigation did not refer to the fact that Badiane had applied for admission to the United States and then withdrew his application on March 29, 2006, as indicated in exhibit 5, they collectively demonstrated that he had attempted to enter the United States on March 29, 2006, and was deported.

With respect to exhibits 6A and 6B—the April 29, 2009, withdrawal of application for admission to the United States and the notice to detain, remove, or present alien—the Reports of Investigation noted that Badiane flew into New York in 2009 and left the following day, and that he was found inadmissible on April 29, 2009. Finally, as to exhibit 6C—Badiane's French passport—one Report of Investigation stated that Badiane had a valid French passport.

Under these circumstances, the district court did not abuse its discretion by denying a continuance. Because there was no abuse of discretion in denying a continuance, Badiane also cannot show the district court abused its discretion in denying his related motion for a new trial.

*B. Admission of Evidence Under Rule 404(b)*

We review for abuse of discretion the district court's decisions as to the admissibility of evidence. *United States v. Carrasco*, 381 F.3d 1237, 1240 (11th Cir. 2004). Under Rule 404(b), the government is required to "provide reasonable notice of the general nature of any [evidence of prior bad acts] that the prosecutor

intends to offer at trial." Fed. R. Evid. 404(b)(2)(A).[6] A prior bad act is admissible under Rule 404(b) if "(1) the evidence is relevant to an issue other than a defendant's character, (2) there is sufficient proof to allow a jury to find that the defendant committed the act by a preponderance of the evidence, and (3) the evidence's probative value is not substantially outweighed by the risk of unfair prejudice." *United States v. Green*, 873 F.3d 846, 858 (11th Cir.), *petition for cert. filed*, No. 17-7299 (U.S. Dec. 20, 2017).

The government again did not comply with best practices in giving Badiane notice that it intended to introduce evidence of the four passport applications he had submitted between 2005 and 2009. In its response to the discovery order, the government noted that it might seek to admit "all evidence made available . . . for inspection" under Rule 404(b). This vague statement runs contrary to the policy behind Rule 404(b)'s notice provision, which is to "reduce surprise and promote early resolution on the issue of admissibility." *Carrasco*, 381 F.3d at 1241 (quotation omitted).

Although the issue is close, we conclude the district court did not abuse its discretion in admitting the prior passport applications. While we have held that a district court abuses its discretion by admitting unnoticed Rule 404(b) evidence, *see id.*, here, the government gave notice in April that it might introduce any of the

---

[6] The rule requires "notice," as opposed to "production."

10

discovery evidence under Rule 404(b).  During discovery, the government produced copies of three of Badiane's prior passport applications, as well as all of the pertinent information about his fourth prior application.  Accordingly, Badiane was put on notice that the government might seek to admit this evidence under Rule 404(b).

Moreover, the prior passport applications were not improper propensity evidence.[7]  Evidence that Badiane had submitted four other passport applications between 2005 and 2009 suggests that he was familiar with the requirements to obtain a passport and therefore only would have paid a substantial sum of money for identifying documents he knew were real.  Additionally, a jury could find that Badiane submitted these applications based on Arauz-Figueroa's testimony and the photographs associated with the applications.  Finally, the probative value of the prior passport applications was not substantially outweighed by the risk of undue prejudice, given that this evidence strongly suggested he knew Metayer's identifying documents were about a real person.  *See United States v. Robinson*, 687 F.2d 359, 361 (11th Cir. 1982) ("Where the issue is [the] defendant's mental state the balance tips toward admissibility.").

---

[7] Badiane also appears to assert that the evidence from the alien file should not have been admitted under Rule 404(b), but he does not present any specific arguments as to why evidence from the alien file was inadmissible.  Accordingly, he has abandoned the issue.  *See Sapuppo*, 739 F.3d at 681.

11

*C. Sufficiency of the Evidence*

"We review *de novo* both the denial of a motion for a judgment of acquittal and the sufficiency of the evidence to sustain a conviction, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Keen*, 676 F.3d 981, 989 (11th Cir. 2012). We will sustain a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Holmes*, 595 F.3d 1255, 1257 (11th Cir. 2010) (quotation omitted). To convict Badiane of aggravated identity theft, the government was required to show, inter alia, that (1) he transferred, possessed, or used another person's means of identification, and (2) he knew the means of identification belonged to a real person. 18 U.S.C. § 1028A(a)(1); *Flores-Figueroa v. United States*, 556 U.S. 646, 657, 129 S. Ct. 1886, 1894 (2009).

The district court did not err in denying Badiane's motion for judgment of acquittal. The evidence demonstrates that Badiane successfully used Metayer's identifying documents to obtain a Georgia identification card in 2013. A reasonable jury could find this to be compelling evidence of Badiane's knowledge that the identifying documents belonged to a real person. *See United States v. Doe*, 661 F.3d 550, 563 (11th Cir. 2011) (stating that a defendant's successful uses of the victim's identifying information to obtain two driver's licenses were

12

"meaningful circumstantial indicia that [the defendant] knew [the victim's] identifying information belonged to a real person"); *Holmes*, 595 F.3d at 1258 (concluding that the defendant's success in using the victim's identifying documents to obtain Florida driver's licenses or identification cards was probative of her knowledge that the identifying documents belonged to a real person). Badiane also used Metayer's identifying documents to apply for a U.S. passport in 2013.  A reasonable jury could conclude that his willingness to subject Metayer's identifying documents to government scrutiny a second time suggested that he knew the documents belonged to a real person.  *See Holmes*, 595 F.3d at 1258. Finally, the jury was entitled to disbelieve Badiane's testimony regarding his lack of knowledge and consider it to be substantive evidence of guilt.  *See United States v. Brown*, 53 F.3d 312, 314-15 (11th Cir. 1995).

### D. Procedural Reasonableness of Badiane's Sentences

"We review *de novo* the district court's interpretation of the Guidelines and its application of the Guidelines to the facts."  *United States v. Campbell*, 491 F.3d 1306, 1315 (11th Cir. 2007) (quotation omitted).  We review for clear error the district court's factual findings regarding sentencing enhancements.  *Id.*

The district court did not err in imposing a two-level enhancement, pursuant to U.S.S.G. § 2L2.2(b)(1), based on Badiane's 2001 removal from the United States under the visa waiver program.  While the enhancement applies when an

13

unlawful alien was previously "deported," we conclude that being removed

qualifies as being "deported" for purposes of § 2L2.2(b)(1). "[S]ince 1996, the

Government has used a unified procedure, known as 'removal,' for both exclusion

and deportation." *Kawashima v. Holder*, 565 U.S. 478, 481 n.2, 132 S. Ct. 1166,

1171 n.2 (2012). Because the terms "deportation" and "removal" may be used

interchangeably, *id.*, we see no reason why "deported," as it is used in §

2L2.2(b)(1), would not encompass removals. The fact that Badiane did not appear

before an immigration judge in his 2001 removal proceeding is of no moment, nor

is it relevant that the notice of intent to remove did not mention any ban on his

return to the country.

The district court likewise did not err in imposing an obstruction of justice

enhancement. To assess an obstruction of justice enhancement based on perjured

testimony, the testimony must be (1) under oath or affirmation, (2) false,

(3) material, and (4) "given with the willful intent to provide false testimony and

not as a result of a mistake, confusion, or faulty memory." *United States v. Singh*,

291 F.3d 756, 763 & n.4 (11th Cir. 2002). Here, Badiane testified under oath that

he had not submitted any passport applications prior to 2013. In light of Arauz-

Figueroa's testimony regarding the facial recognition software and her statement

that Badiane's twin was not identical, the district court did not clearly err in finding

that Badiane's testimony was false. Badiane's testimony was also material

14

because whether he had previously applied for U.S. passports was relevant to the question of whether he knew that a passport applicant must use identifying documents belonging to a real person.  Finally, no evidence suggests that Badiane's false testimony was the result of a mistake, confusion, or a faulty memory, especially given that he was confronted with prior passport applications containing his pictures, yet still denied submitting them.

### III. CONCLUSION

The district court did not abuse its discretion in denying Badiane's motions for a continuance and a new trial because he was put on notice of the relevant contents of his alien file approximately four months prior to trial.  Likewise, it was not an abuse of discretion to admit evidence of Badiane's prior passport applications, given that the government gave notice of its intent to introduce this Rule 404(b) evidence and the evidence was relevant to the key issue in the case. Because the government provided more than sufficient evidence of guilt, the district court did not err in denying his motion for judgment of acquittal.  Finally, the district court properly imposed both Guidelines enhancements.

**AFFIRMED.**